**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

**v.**

**William Eugene JONES, Jr.,**
**Defendant-Appellant.**

**No. 82SA113.**

Supreme Court of Colorado,
En Banc.

Sept. 6, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., John Daniel Dailey, Chief, Crim. Appeals Unit, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Susan L. Fralick, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, William Eugene Jones, Jr., appeals from the judgment denying his Crim.P. 35 motion to vacate his 1975 conviction for extreme indifference murder under the statutory proscription for that offense as originally enacted in the Colorado Criminal Code. 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(d). He claims that his conviction violates equal protection of the laws under the Colorado Constitution.[1] Finding his argument without merit, we affirm the judgment.

On July 30, 1974, the defendant was charged in the Boulder District Court with extreme indifference murder. The homicide, committed in 1974, arose out of the stabbing of the victim in her apartment, after she and the defendant returned from an evening at a neighborhood bar. At the conclusion of a six day jury trial the jury returned a verdict of guilty with a recommendation of leniency, as then authorized by statute.[2] The defendant was sentenced on February 3, 1975, to a term of eighteen to twenty-five years. He appealed his conviction to this court, and the judgment was affirmed in *People v. Jones*, 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed,* 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977).[3]

On July 15, 1981, the defendant filed a motion under Crim.P. 35 asserting that his conviction violated the Colorado constitutional guarantee of equal protection of the laws because, under the statutory scheme applicable to his 1974 prosecution, the statutory elements of extreme indifference murder were indistinguishable from second degree murder. The district court rejected the defendant's equal protection argument. We also find his argument without merit.

---

1. The right to equal protection of the laws is included within the Due Process Clause of Art. II, Sec. 25 of the Colorado Constitution. *E.g., People v. Marcy,* 628 P.2d 69 (Colo.1981); *People v. Westrum,* 624 P.2d 1302 (Colo.1981); *People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied* 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978); *People v. Dominguez,* 193 Colo. 468, 568 P.2d 54 (1977); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975).

2. The penalty scheme applicable to the defendant's trial authorized the jury in a first degree murder case to return a verdict fixing the penalty at life imprisonment or death, or to return a verdict recommending leniency, in which case the court could impose a sentence of fifteen years to life. 1971 Perm.Supp., C.R.S. 1963, 40–1–304.

3. In his original appeal the defendant argued that the evidence was insufficient to support the jury verdict because the facts did not establish the requisite culpability for extreme indifference murder. We rejected his argument and held that the evidence was sufficient to support the verdict. The defendant makes the same claim in this appeal. Because we considered and rejected this claim in the course of our opinion in *People v. Jones,* 193 Colo. at 254, 565 P.2d at 1336, we do not consider it again in this proceeding. *See, e.g., People v. Johnson,* 638 P.2d 61 (1981); *People v. Trujillo,* 190 Colo. 497, 549 P.2d 1312 (1976).

In 1974 the Colorado Criminal Code provided that a person commits the crime of murder in the first degree if "[u]nder circumstances manifesting extreme indifference to the value of human life, he intentionally engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another." 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(d). The culpable mental state of "intentionally" was defined in 1971 Perm. Supp., C.R.S.1963, 40–1–601(6), as follows:

"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense, when his conscious object is to cause that result or to engage in that conduct or when his actions are such as to give rise to a substantial certainty that such results will be produced."

Second degree murder, as defined in 1971 Perm.Supp., C.R.S.1963, 40–3–103(1), was committed when a person (a) caused "the death of a person intentionally, but without premeditation;" or (b) "[w]ith intent to cause serious bodily injury to a person other than himself, he cause[d] the death of that person or of another person."

We examined the identical statutory scheme underlying this appeal in *People ex rel. Russel v. District Court,* 185 Colo. 78, 521 P.2d 1254 (1974). There, in an original proceeding, we considered the validity of a pretrial order which dismissed the charge of extreme indifference murder on the ground that the statutory definition of that offense was indistinguishable from second degree murder and therefore was unconstitutionally void for vagueness. In rejecting this reasoning we pointed out that the culpability element of "intentionally" in extreme indifference murder did not require a specific intent to cause a particular result. Rather, what was required for this offense was that "the conduct creating the grave risk of death be consciously done." *Id.* at 83, 521 P.2d at 1256. This culpability, essentially one of general intent, when coupled with the additional statutory element of acting "under circumstances manifesting extreme indifference to the value of human life," rendered the statutory crime of extreme indifference murder sufficiently distinguishable from second degree murder, which required the intent "to cause the death of a *particular* person." *Id.,* 521 P.2d at 1256–57 (emphasis in original).[4] We held in *Russel* that "[t]his distinction between the two statutes, one directed toward the intentional—though not premeditated—taking of a particular life, the other directed to the intentional endangering of human life, is adequate to give a sufficient basis for all men of common intelligence to distinguish the crimes." *Id.* at 84, 521 P.2d at 1257.[5]

---

4. Although not discussed in *Russel,* the second degree murder statute required, as an alternative to the intent to cause death, the intent to cause serious bodily injury. 1971 Perm.Supp., C.R.S.1963, 40–3–103(1)(b). In both instances, the intent was defined in terms of causing a particular result to another person.

5. The defendant, citing *People v. Davis,* 187 Colo. 117, 530 P.2d 499 (1974), claims that under the pre-1977 version of the Colorado Criminal Code the *mens rea* for second degree murder was intentionally engaging in conduct which gave rise to a substantial certainty that the death of another would result. *Davis,* which held that the trial court erred in failing to include the entire statutory definition of "intentionally" in its instruction on the elements of second degree murder, cannot be reconciled with our decisions in *People ex rel. Russel v. District Court,* 185 Colo. 78, 521 P.2d 1254 (1974), and *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977), nor with the legis-

lative expression of intent in the 1977 amendments to the Colorado Code.

In *Russel* we went to some length in pointing out the distinction between extreme indifference murder and second degree murder:

"[T]he element which distinguishes [extreme indifference murder] from second-degree murder is that the latter degree requires that the perpetrator possess the intent to take the life of a particular person while this first-degree murder statute does not. The element of 'extreme indifference to human life' by definition, does not address itself to the life of the victim, but to human life generally. Conversely, though the statute requires that the conduct which creates a grave risk of death be intentional, the use of 'intentionally' here does not necessarily mean that the intent be to take the life of a particular person. Indeed, if such were the case, there would be little difference between this statute and the other sections of the first-degree murder statute, *see* 1971 Perm.Supp., C.R.S.1963, 40–3–

In *People v. Marcy,* 628 P.2d 69 (Colo. 1981), we considered the constitutionality of the extreme indifference murder statute in the context of statutory amendments to the Colorado Criminal Code which became effective on July 1, 1977. These amendments changed the essential culpability element of extreme indifference murder from "intentionally" to "knowingly," Colo.Sess.Laws 1977, ch. 224, 18–3–102(1)(d) at 960, and also transformed second degree murder from a specific intent offense to a crime of general intent with a *mens rea* of "knowingly," *id.* 18–3–103(1)(a) at 960.[6] Simultaneously with these amendments, the culpable mental state of "knowingly" was equated with "willfully" and was defined as follows:

"A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' or 'willfully,' with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." Colo.Sess.Laws, ch. 224, 18–1–501(6) at 959.

In holding Marcy's conviction of extreme indifference murder violative of equal protection, we concluded that (1) to knowingly engage in conduct creating a grave risk of death to another, as required for extreme indifference murder, was not sufficiently distinguishable from the second degree murder proscription of causing the death of another knowingly; and (2) the term "under circumstances manifesting extreme indifference to the value of human life" was the substantial equivalent of "knowingly engaging in conduct that creates a grave risk of death to another," thus adding nothing to the statutory definition of extreme indifference murder that rendered this offense reasonably distinguishable from second degree murder.

In the course of our opinion in *Marcy,* we elaborated further on the distinction between extreme indifference murder and second degree murder, as these offenses were defined prior to July 1, 1977. We

---

102(1)(a). Furthermore, our statutes define 'intentionally' as 'when his conscious object is to cause that result or to engage in that conduct,' 1971 Perm.Supp., C.R.S.1963, 40–1–601(6), which we read to mean that the conduct creating the grave risk of death be consciously done.

"Again, in contrast, the second-degree murder statute states in part that 'he cause the death of a person *intentionally,* but without premeditation.' 1971 Perm.Supp., C.R.S. 1963, 40–3–103(1)(a). We believe the only construction which this phrase can be given is that the intent be to cause the death of a *particular* person. Otherwise, there would be no need to distinguish between 1971 Perm.Supp., C.R.S.1963, 40–3–102(1)(a), which by definition is the premeditated taking of a person's life, and second-degree murder. That the legislature intended to make this distinction is beyond doubt, *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973), and we must give that intent meaning." *People ex. rel. Russel v. District Court,* 185 Colo. at 83–84, 521 P.2d at 1256–57.

In *Cornelison* we held that under the pre-1977 version of the Colorado Criminal Code the affirmative defense of voluntary intoxication was applicable to negate the specific intent essential to second degree murder. Finally, in the 1977 amendments to the Colorado Criminal Code, the legislature, in changing the culpability

element of second degree murder from "intentionally" to "knowingly," made manifest its intent to transform this crime from one of specific intent to a general intent offense. Subsections 18–1–501(5) and (6), C.R.S.1973 (1978 Repl.Vol. 8), state in pertinent part:

"(5) 'Intentionally' or 'with intent.' All offenses defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are declared to be specific intent offenses. . . .

"(6) 'Knowingly' or 'willfully.' All offenses defined in this code in which the mental culpability requirement is expressed as 'knowingly' or 'willfully' are declared to be general intent crimes."

Since *Davis* is contrary to the clear import of *Russel* and *Cornelison,* and cannot be squared with the legislative intent expressed in the 1977 amendment to the Criminal Code, we find it unpersuasive authority to support the defendant's claim that second degree murder, prior to the 1977 amendment, was not a specific intent offense.

6. The 1977 amendments also repealed section 18–3–103(1)(b), C.R.S.1973, which provided that second degree murder was committed if the offender caused the death of a person "[w]ith intent to cause serious bodily injury to a person other than himself." Colo.Sess.Laws 1977, ch. 224, § 67 at 971.

expressly recognized, for example, that prior to the 1977 amendment the culpability element for extreme indifference murder, requiring as it did "a conscious awareness that the conduct created a life endangering risk to another," was bottomed in the offender's conduct rather than the result of his conduct. *People v. Marcy*, 628 P.2d at 77. We also noted that the additional element of acting "under circumstances manifesting extreme indifference to the value of human life" was not without independent objective meaning under the statutory scheme antedating the 1977 amendment. This element, we stated, referred to the willful disregard of the life endangering consequences of one's action, *id.* at 79; *see also People v. Castro*, 657 P.2d 932 (Colo. 1982), and was not the mere semantic equivalent of intentionally or consciously engaging in conduct that created a grave risk of death to another.

It is quite clear, therefore, that prior to July 1, 1977, the offenses of extreme indifference murder and second degree murder did not proscribe the same conduct with disparate sanctions, nor did these crimes lack an intelligible standard for distinguishing the conduct encompassed within each statutory proscription. Extreme indifference murder required the offender, in addition to causing the death of another, to intentionally (*i.e.,* with a conscious awareness) engage in conduct that created a grave risk of death to another and to willfully disregard the life endangering risks that his conduct posed to others. Second degree murder, in contrast, involved the causation of another's death with the specific intent to cause either death or serious bodily injury to that particular person.

In view of the discernible differences between these two offenses, the district court properly rejected the defendant's equal protection challenge to his conviction for extreme indifference murder.[7]

The judgment is affirmed.

---

**7.** At the time of the defendant's crime second degree murder carried a penalty of ten to fifty years. 1971 Perm.Supp., C.R.S.1963, 40–1–105(1). Because the jury recommended leniency in its guilty verdict for extreme indifference murder, the penalty scheme then in existence authorized a sentence of fifteen years to life. 1971 Perm.Supp., C.R.S.1963, 40–1–105. Thus, the defendant's sentence of eighteen to twenty-five years was clearly within the penalty range for second degree murder. Under these circumstances the defendant is in no position to argue that he was punished for the same conduct proscribed by second degree murder, but received a greater penalty in violation of equal protection of the laws. Moreover, given the discernible differences between the culpability element of extreme indifference murder and second degree murder in the pre-1977 version of the Colorado Criminal Code, we cannot say that, even in the absence of a sentence within the penalty range for second degree murder, the legislature was amiss in punishing the conduct encompassed within the statutory crime of extreme indifference murder more severely than second degree murder.