ROVIRA, Justice.
These two cases on appeal raise an identical issue: The constitutionality of Colorado’s “extreme indifference” murder statute, section 18-3-102(l)(d), 8B C.R.S. (1986). In both cases, the district court relying on People v. Marcy, 628 P.2d 69 (Colo. 1981), held the statute facially unconstitutional as violative of defendants’ equal protection rights under article II, section 25 of the Colorado Constitution because it could not be rationally distinguished from Colorado’s second-degree murder statute, section 18-3-103(l)(a), 8B C.R.S. (1986). Because the changes made by the General Assembly after the Marcy decision permit *1224 a rational distinction to be made between the two statutes, we find the extreme indifference statute constitutional. Accordingly, we reverse and remand both cases for further proceedings.
I.
In People v. Jefferson, No. 86SA464, the defendant was charged by information with two counts of murder after deliberation, section 18-3-102(l)(a), 8B C.R.S. (1986), and a single count of violent crime, section 16-11-309, 8A C.R.S. (1986). Later, the information was amended and two counts of extreme indifference murder were added.
Jefferson moved to dismiss the extreme indifference murder counts, alleging that the statute does not give a reasonable person notice of prohibited conduct and is, therefore, void for vagueness, and that the statute is not sufficiently distinguishable from second-degree murder to warrant the substantial difference in penalty, and therefore, violates equal protection of the laws. Following oral argument, the trial court relying on Marcy determined that any distinction between the extreme indifference and second-degree murder statutes is “illusory at best.” Accordingly, it found the statute unconstitutional and granted the motion to dismiss. The People appeal, pursuant to section 16-12-102(1), 8A C.R.S. (1986) (duty of district attorney to appeal finding of unconstitutionality of statute in criminal case), challenging the district court’s declaration of unconstitutionality.
In People v. Savage, No. 87SA237, the defendant was charged with one count of first-degree murder after deliberation, one count of extreme indifference murder, and one count of violent crime. On April 21, 1987, Savage filed a motion to dismiss the extreme indifference count, on the same grounds as Jefferson.
The trial court, finding the extreme indifference statute insufficiently distinguishable from second-degree murder, held the statute unconstitutional and granted the motion. The People appeal pursuant to section 16-12-102(1), 8A C.R.S. (1986).
II.
Before turning to the substantive issues raised by these appeals, we must first consider a matter of appellate procedure. In People v. Jefferson, the defendant contends that this court does not have jurisdiction to consider the People’s appeal under section 16-12-102(1), and consequently, that appeal should be dismissed.
Under section 16-12-102(1), the “procedure to be followed in filing and prosecuting appeals under this section shall be as provided by applicable rule of the Supreme Court of Colorado.” Pursuant to C.A.R. 1, only “final judgments” of a district court may be appealed. Alleging that the district court’s declaration and dismissal are not “final orders,” because the dismissal did not completely determine the rights of the parties, since the People remain free to try the defendant on the remaining counts of the information, Jefferson contends that there is no “matter reviewable” under C.A. R. 1.
We have stated in the past that trial court orders may not be appealed in the absence of a final judgment which terminates the prosecution. People v. Cochran, 176 Colo. 364, 366, 490 P.2d 684, 685 (1971) (no final judgment where defendant may be tried again on same charge). Further, we have defined final judgment “as one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings.” Stillings v. Davis, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965).
Nevertheless, there is support in our cases for viewing dismissals of particular charges of a multi-count information as “final judgments” within the meaning of C.A.R. 1. In the past, we have recognized without discussion the People’s right to appeal partial dispositions of multi-count informations pursuant to the authority granted the People by section 16-12-102(1). See, e.g., People v. Pedrie, 727 P.2d 859, 861 n. 6 (Colo.1986) (People appeal dismissal of two counts of eight-count information for lack of probable cause; appeal of *1225 probable cause determination considered on its merits); People v. Williams, 628 P.2d 1011, 1012-13 (Colo.1981) (where trial court dismissed felony murder count for lack of probable cause, this court issued order to show cause to prevent the trial court from proceeding on remaining first-degree count despite People’s notice of an appeal, and addressed the People’s appeal on its merits). In both cases, the presence of remaining counts of an information was not held as a bar to our consideration of the dismissal of the contested counts on appeal.
In addition, it is appropriate to analogize the dismissal of a charge to a final judgment. A dismissal of a charge is not interlocutory, in a sense that it represents one or more steps toward the resolution of a given charge against a particular defendant. Nor is it like a motion for new trial in the case of juror misconduct prior to conviction, see Cochran, 176 Colo, at 364, 490 P.2d at 684, where the court can order the defendant tried again on the same charge. Instead, the dismissal of a charge against the defendant, absent a right of immediate appeal, disposes of the opportunity to try that defendant on that particular charge at the same time other charges are pending before the trial court.
This interpretation is also supported by the language of the statute. While the prosecution is given permission to appeal “any decision of the trial court in a criminal case upon any question of law,” the district attorney has a duty to appeal where a state statute has been adjudged unconstitutional in a criminal case. § 16-12-102(1). The obligation imposed on the People to appeal a declaration of unconstitutionality underscores the legislature’s intent that its acts not be declared unconstitutional in the absence of meaningful and immediate appellate review. Declarations of unconstitutionality under section 16-12-102(1), as with suppression orders under section 16-12-102(2), are specially appealable by statute, even though neither category could technically be considered a final judgment under the definition set forth in Stillings v. Davis, 158 Colo, at 310, 406 P.2d at 338.
In the past, we have recognized without discussion the People’s right to appeal from a declaration of unconstitutionality of a statute without requiring that the entire case first be dismissed. See, e.g., People v. Moyer, 670 P.2d 785, 787 (Colo.1983) (trial court held statute unconstitutional and probable cause did not exist; order dismissing the charges was stayed pending resolution of the People’s appeal); People v. Mizell, sub nom. People v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348, 354 (Colo. 1985) (trial court held act unconstitutional, charges not dismissed but ruling stayed pending appeal to supreme court). In both cases, we considered the merits of the appeal.
We find, therefore, in light of our previous cases and the words of section 16-12-102(1), that we have jurisdiction to consider the People’s appeal, raising as , it does the issue of the constitutionality of Colorado’s extreme indifference murder statute. We now turn to the merits of both cases.
III.
A.
In considering the motions to dismiss both district courts found the extreme indifference murder statute indistinguishable from the second-degree murder statute. They concluded that prosecution under the former statute violated the defendants’ rights to equal protection of the laws, under article II, section 25 of the Colorado Constitution.
Equal protection assures that those who are similarly situated will be afforded similar treatment. People v. Mozee, 723 P.2d 117, 126 (Colo.1986); People v. Calvaresi, 188 Colo. 277, 281, 534 P.2d 316, 318 (1975). When two criminal statutes prescribe different punishment for the same acts, a defendant convicted and sentenced under the harsher statute is denied equal protection of the laws. Mozee, 723 P.2d at 126. Similarly, separate statutes proscribing with different penalties what ostensibly might be different acts, but offering no intelligent standard for distinguishing the proscribed conduct, run afoul of equal pro *1226 tection under state constitutional doctrine. People v. Marcy, 628 P.2d at 75.
Equal protection of the laws requires that statutory classifications of crimes be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation. People v. Mumaugh, 644 P.2d 299, 301 (Colo.1982); People v. Brown, 632 P.2d 1025, 1027 (Colo.1981). The General Assembly may, however, prescribe more severe penalties for acts it perceives to have graver social consequences, even if the differences are only a matter of degree. Mozee, 723 P.2d at 126; People v. Haymaker, 716 P.2d 110, 116 (Colo.1986). The constitution does not demand symmetry of punishment where valid classifications, based on varieties of evil, exist. People v. Czajkowski, 193 Colo. 352 at 356, 568 P.2d 23 at 26 (1977). Nor is equal protection offended simply because the conduct in question violates more than one statutory proscription. People v. Owens, 670 P.2d 1233, 1237-38 (Colo.1983).
To satisfy a challenge under the equal protection clause, the statutory classification must turn on “reasonably intelligible standards of criminal culpability.” Marcy, 628 P.2d at 80. This means that any definition must be “sufficiently coherent and discreet that a person of average intelligence can reasonably distinguish it from conduct proscribed by other offenses.” Id. at 80-81.
Section 18-3-102(l)(d) provides that a person commits the crime of murder in the first degree if:
Under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another.
By comparison, section 18-3-103(l)(a) provides that a person commits the crime of murder in the second degree if “[h]e causes the death of a person knowingly, but not after deliberation.”[1] If these two crimes cannot be sufficiently distinguished so that a person of average intelligence could understand the difference between them, then the defendant who engages in identical conduct proscribed by both statutes but is sentenced under the harsher penalty accompanying a conviction for first-degree murder, would be denied the equal protection of the laws. We now turn to an analysis of the extreme indifference murder statute to determine if it proscribes conduct different from that proscribed by the state’s second-degree murder statute.
B.
At common law, murder was defined as the unlawful killing of another human being with “malice aforethought.” Model Penal Code § 210.2, comment at 13-14 (official draft/rev. comments 1980). There were no degrees of murder at common law; instead, malice was the essential ingredient distinguishing murder from other types of criminal homicide. Quinn, Homicides Under the Colorado Criminal Code, 49 Den. L.J. 137, 138 (1972). Over time, the phrase malice aforethought became an arbitrary symbol used by common law judges to signify any of a number of mental states deemed sufficient to support liability for murder. Model Penal Code, supra § 210.2, comment at 14. Among the categories was what became known as “depraved-heart murder.” Id. This label derived from decisions and statutes condemning as murder unintentional homicide under circumstances evincing a “depraved mind” or an “abandoned and malignant heart.” Id.
*1227 Malice aforethought could be either express or implied. 1 Warren on Homicide § 63 (1938 ed.). Malice included more than simply an intent to kill or endanger human life. Quinn, 49 Den.LJ. at 138. Malice could also be found where the killer directed no animosity, enmity, or ill will toward the victim. C. Torcia, 2 Wharton’s Criminal Law § 137 (14th ed. 1979). In describing the kind of malice which would support a conviction for murder at common law, a number of commentators seized upon the following definition:
Malice is not restricted to hatred, spite, or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life proceeding from a heart void of a just sense of social duty and fatally bent on mischief.
1 Warren on Homicide § 66 at 271. See also 2 Wharton’s §§ 137, 143.
The essential concept was one of extreme recklessness regarding homicidal risk. Model Penal Code, supra § 210.2 comment at 15. Thus, a person might be liable for murder absent any actual intent to kill or injure if he caused the death of another in a manner exhibiting “a wanton and willful disregard of an unreasonable human risk,” or, in the confusing elaboration of one court “a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty.” Id. citing Commonwealth v. Malone, 354 Pa. 180, 188, 47 A.2d 445, 447 (1946). Since “depraved heart” murderers exhibit the same disregard for the value of human life as deliberate or premeditated murderers, they are viewed as deserving of the same serious sanctions. Id. at 19.
Examples of the kinds of conduct which would demonstrate “depraved heart” murder at common law include: the firing of a loaded gun, without provocation, into a moving train and the resultant death of an innocent bystander, 1 Warren § 66; the discharge of a firearm into a crowd of people, operating a vehicle at high speed, placing obstructions on a railroad track, throwing a heavy piece of timber from a roof onto a crowded street, 2 Wharton’s § 143; pointing a revolver loaded with a single cartridge and firing it on the third pull of the trigger during a game of Russian Roulette, Commonwealth v. Malone, 354 Pa. at 180, 47 A.2d at 445; firing several shots into a home known to be occupied, Hill v. Commonwealth, 239 Ky. 646, 40 S.W.2d 261 (1931); intending to shoot over a victim’s head in order to scare him, but hitting him by “mistake,” Myrick v. State, 199 Ga. 244, 34 S.E.2d 36 (1945); and throwing a heavy beer glass at a woman carrying a lighted oil lamp, Mayes v. People, 106 Ill. 306, 46 Am.Rep. 698 (1883).
The Pennsylvania General Assembly first divided the crime of murder into degrees in 1794. Comment, Extreme — Indifference Murder: The Impact of People v. Marcy, 54 U.Colo.L.Rev. 83, 86 (1982). In 1861, the territory of Colorado adopted the innovative degree structure introduced by Pennsylvania, and classified murder into two degrees. Quinn, 49 Den.LJ. 138. The earliest Colorado murder statutes embraced as murder in the first degree more than premeditated or intentional murder. Also classified as murder in the first degree were those homicides perpetrated by an “act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life.” “An Act Fixing the Punishment for Murder,” ch. 64, sec. 2, 1901 Colo.Sess.Laws 153, 154 (codified at R.S. 1908, ch. 35, sec. 1624).
From Colorado’s earliest days the legislature has elected to punish the forerunner of extreme indifference murder as murder of the highest degree. The language quoted above remained a fixture of Colorado’s murder statutes despite periodic updating and revising of the state’s criminal laws.[2]
*1228 In Longinotti v. People, 46 Colo. 173, 102 P. 165 (1909), this court considered the type of conduct encompassed by the statutory prohibition of extreme indifference murder. We interpreted legislative intent as restricting the application of the depraved heart murder statute to those acts evincing “universal malice,” as opposed to acts directed at the person actually killed:
Every act that results in the death of a person is greatly dangerous to the life of such person, but the statute intended that there should be an act' which shows the accused to have had a depraved mind, regardless of human life, and is intended to include those cases where a person has no deliberate intention to kill any particular individual. In other words, when a person kills another by an act which is greatly dangerous to the lives of others, and which shows a depraved mind regardless of human life, he is guilty of murder in the first degree; not because he has atrociously murdered a particular individual, but because his act has evinced universal malice, a malice against mankind in general.
We think the legislature, in this clause, intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called “universal malice.” By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim.
46 Colo, at 176, 180-81, 102 P. at 166, 168. Quoting Mitchell v. State, 60 Ala. 26. At common law, “universal malice” was a term used to describe those acts greatly dangerous to the lives of persons other than the one killed, revealing a depraved mind, which do not include a killing resulting from intentional acts directed at the person slain. 1 Warren § 78 at 366 (example listed of homicide committed by shot being intentionally and recklessly fired into a private residence).
The appearance of the Model Penal Code prompted the Colorado General Assembly to recodify the state’s criminal laws in the 1972 Colorado Criminal Code (Code).[3] Effective July 1,1972, the new Code reflected many reforms recommended by the Model Penal Code, particularly the use of four concepts to find the mental culpability required of most crimes.[4] At the same time, the Code retained various measures of common law origin, including the degree structure for murder. The new first-degree murder statute proscribed premeditated and felony murder, as well as a modernized form of depraved heart murder. Under the Code, a person commits first-degree murder if “[u]nder circumstances manifesting extreme indifference to the value of human life, he intentionally engages in conduct which creates a* grave risk of death to a person other than himself, and thereby causes the death of another.” § 18-3-102(l)(d), 8 C.R.S. (1973). By comparison, a person commits the crime of second-degree murder if “[h]e causes the death of a person intentionally, but without premeditation.” § 18-3-103(1)(a), 8 C.R.S. (1973).
This court first examined extreme indifference murder under the Code in People ex rel. Russel v. District Court, 185 Colo. 78, 521 P.2d 1254 (1974). Although the mens rea for both extreme indifference murder and second-degree murder was the same — “intentionally”—we upheld the constitutionality of the extreme indifference statute, relying on the distinction between specific and general intent crimes. We dis *1229 tinguished the two crimes by employing an analysis similar to that used in Longinotti:
As we read the section in question, the element which distinguishes it from second degree murder is that the latter degree requires that the perpetrator possess the intent to take the life of a particular person while this first degree murder statute does not. The element of “extreme indifference to human life,” by definition, does not address itself to the life of the victim, but to human life generally. Conversely, though the statute requires that the conduct which creates a grave risk of death be intentional, the use of “intentionally” here does not necessarily mean that the intent be to take the life of a particular person.
185 Colo, at 83, 521 P.2d at 1256.
In distinguishing the two statutes on this basis, one directed toward the intentional— though not premeditated — taking of a particular life, the other directed to the intentional endangering of human life generally, we preserved extreme indifference murder as a special category of first-degree murder. This distinction was held “adequate to give a sufficient basis for all men of common intelligence to distinguish the crimes.” Id. 185 Colo, at 84, 521 P.2d at 1257.
In People v. Jones, 193 Colo. 250, 565 P.2d 1333, appeal dismissed, 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), we extended the scope of extreme indifference murder to cover a situation where the defendant callously created a grave risk of death, but only to a single individual. On appeal, the defendant’s first-degree murder conviction was upheld, even though the “grave risk of death” was confined to a single individual. Since the defendant’s conduct was “intentional” and the circumstances of the victim's death revealed “extreme indifference,” the statute was held to apply to the facts of the case. We rejected defendant’s contention that extreme indifference murder should be limited to “prohibiting conduct that greatly endangers many people as opposed to a single person. The statute (which read ‘grave risk of death to a person’) is not that exclusive.” Id. 193 Colo, at 254, 565 P.2d at 1336. Our holding in Jones —that extreme indifference murder encompassed conduct which created a grave risk of death to a single person — presented a departure from the narrow holding of Russel. Nevertheless, in Jones we did uphold the concept of extreme indifference murder as a distinct category of criminal homicide, relying in strong part on the “key difference between the two statutes,” i.e., extreme indifference statute requires that the defendant act “ ‘[u]nder circumstances manifesting extreme indifference to the value of human life.’ ” Id. 193 Colo, at 254, 565 P.2d at 1335.
The situation was altered in 1977, when the General Assembly amended several criminal statutes in an effort to distinguish specific and general intent crimes. Among the changes made was the substitution of “knowingly” for “intentionally” as the applicable mens rea in both the extreme indifference and second-degree murder statutes. See “An Act Concerning Criminal Culpability,” ch. 224, secs. 5, 6; §§ 18-3-102(1)(d) and 18-3-103(1)(a), 1977 Colo.Sess. Laws, 959, 960 (codified at C.R.S. §§ 18-3-102(1)(d) and 18-3-103(1)(a) (1977 Supp. and 1978 RepLVol.)).
In People v. Marcy, 628 P.2d 69 (Colo.1981), the first case which arose after the 1977 amendments, we concluded that the extreme indifference murder statute violated the equal protection of the laws under article II, section 25 of the Colorado Constitution because the crime of first-degree murder by extreme indifference is not sufficiently distinguished from second-degree murder to warrant the substantial differences in penalties authorized by the statutory scheme. After examining the culpability elements of both offenses, both of which mandated that the death causing act be done “knowingly,” we held that we were unable to find “any rational basis of distinction” between the two statutes. Marcy, 628 P.2d at 78. Moreover, the added component of the extreme indifference statute — “‘under circumstances manifesting extreme indifference to the value of human life’ — adds nothing to the proscribed conduct that renders it reasonably *1230 distinguishable from the statutory definition of murder in the second degree.” Id.[5]
We held in Marcy that the statutory overlap between the elements of the two crimes licenses the jury to create its own standard of adjudication, since no more proof is required for a conviction under one statute than under the other. Id. at 80. “[A]ny distinction between that conduct proscribed by the extreme indifference statute and second-degree murder, as presently defined in section 18-3-103(l)(a) would be illusory at best.” Id.
In June 1981, after we had reversed a series of convictions for extreme indifference murder based on our holding in Marcy.,[6] the General Assembly adopted an amended version of extreme indifference murder. See “An Act Concerning the Criminal Code,” ch. 212, sec. 4, 1981 Colo. Sess.Laws 972, 973 (codified at § 18-3-102 (l)(d), C.R.S. (1982 Supp.)). The new statute reads:
A person commits the crime of murder in the first degree if: under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another.
(Italics reflect 1981 changes.) The question to which we now turn is whether the changes made by the legislature in 1981 sufficiently distinguish the extreme indifference statute from the second-degree murder statute to pass constitutional muster under the equal protection clause of the Colorado Constitution.
C.
Before addressing the substantive issues, it is useful to consider important rules of constitutional interpretation which have guided this court as we have reviewed similar questions in the past.
Although we cannot disregard our responsibility to the rational and evenhanded application of the law under our state system of criminal justice, Marcy, 628 P.2d at 73, we have also stated on various occasions that “it is not the role of this court to act as overseer of all legislative action and declare statutes unconstitutional merely because we believe they could be better drafted or more fairly applied.” Russel, 185 Colo, at 81, 521 P.2d at 1255. Moreover, every statute which we scrutinize is presumed to be constitutional and the assailant of a statute carries the burden of prov *1231 ing invalidity beyond a reasonable doubt. People v. Beaver, 190 Colo. 554, 556, 549 P.2d 1315-16 (1976). Where a statute is capable of two interpretations, we will interpret it so as to satisfy constitutional dictates. Russel, 185 Colo, at 81-82, 521 P.2d at 1255; People v. Moore, 674 P.2d 354, 357 (Colo.1984). We should not seek out reasons to invalidate a statute. Harris v. Heckers, 185 Colo. 39, 41, 521 P.2d 766, 768 (1974). Rather, if the statute is susceptible to different interpretations, one of which is constitutional, we should interpret it so as to preserve its validity. People v. Gonzales, 188 Colo. 272, 275, 534 P.2d 626, 628 (1975).
The Criminal Code affirms as one of its general purposes: “to differentiate on reasonable grounds between serious and minor offenses, and prescribe penalties which are proportionate to the seriousness of offenses....” § 18-l-102(l)(c), 8B C.R.S. (1986). We have generally recognized the legislative authority to enact gradations of punishment so long as actions proscribed are rationally distinguishable and the penalties imposed are not disproportionate. See People v. Ledman, 622 P.2d 534, 539 (Colo.1981). It is clearly within the legislative prerogative to establish the penalties and definitions which shall apply to specific criminal offenses. People v. Bramlett, 194 Colo. 205, 210, 573 P.2d 94, 97 (1977). Moreover, establishing the legal constituents of criminal liability is a uniquely legislative function. See Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977); Ledman, 622 P.2d at 539.
The Colorado legislature has historically differentiated among degrees of murder according to the applicable mental states and surrounding circumstances. Moreover, the 1981 revisions to the extreme indifference murder statute illustrate consistent support in the legislature for extreme indifference murder as a category of first-degree murder, for which the strongest sanctions are appropriate.
The 1981 amendment reaffirmed the element of cold-bloodedness, as represented by the phrase “under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally.” § 18-3-102(l)(d) (Italics 1981 amendments); see comment, Extreme Indifference Murder, 54 U.Colo.L.Rev. at 94. This element really refers to motive or provocation, and serves to connect the 1981 amendment with the earliest attempts in this state to proscribe extreme indifference murder. See, e.g., Longinotti, 46 Colo, at 181, 102 P. at 168 (“by universal malice, we ... mean ... depravity of the human heart, which determines to take life upon slight or insufficient provocation without knowing or caring who may be the victim.”). This notion of cold-bloodedness (or aggravated recklessness) provides an intelligent standard to overcome an equal protection challenge.
From the earliest statutory formulation which proscribed “depraved heart murder” through the narrowing construction of Longinotti, and ultimately to the most recent formulation codified in the statute under review, the defining characteristic of the continuum has remained the same: “aggravated recklessness.” See comment, Extreme Indifference Murder, 54 U.Colo. L.Rev. at 97. The intent of the legislature has always been to prohibit extremely reckless conduct, when accompanied by evidence of “universal malice.”
What has consistently exercised the legislature in proscribing extreme indifference murder is aggravated recklessness, not that practical certainty of death which is at the heart of the second-degree murder statute. Marcy, 628 P.2d at 78; Mingo, 196 Colo, at 317, 584 P.2d at 633. This interpretation is supported by section 210.21 of the Model Penal Code, a major source for the 1972 revision of the Colorado Criminal Code. That section proscribes as murder, homicides committed “purposely or knowingly,” as well as homicides “committed recklessly under circumstances manifesting extreme indifference to the value of human life.” Model Penal Code § 210.21 at 13.
The comments to the Model Penal Code state that “there is a kind of reckless homicide that cannot fairly be distinguished in grading terms from homicides committed *1232 purposely or knowingly.” Id. at 21. Ordinary recklessness is sufficient for conviction of manslaughter. In a prosecution for murder, however, the code calls for the further judgment “whether the actor’s conscious disregard of the risk, under the circumstances, manifests extreme indifference to the value of human life.” Id. Whether an actor’s recklessness is so extreme is a question which “must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as mur-der_” Id. at 22. The comments to this section of the Model Penal Code list as examples of that extreme or aggravated recklessness which would qualify as criminal homicide: shooting into a crowd, an occupied house, or a moving automobile. Id. at 22-23.
What the legislature sought to proscribe, especially through its 1981 amendments, was aggravated or extremely reckless conduct, under circumstances manifesting cold-blooded disregard for the value of human life generally.
The 1981 addition of the words “universal malice” and “generally” to the language of the statute is an unmistakable indication of the legislative intent to retreat from the confusion sown by People v. Jones, and the 1977 amendments, and limit the application of extreme indifference murder to situations in which the actor demonstrates an indifference to human life generally, as distinguished from indifference to, or willingness to take, a particular human life. This interpretation is supported by the addition of the words “or persons” following person in the statute.
These changes reinforce the element of cold-bloodedness. When a person creates a grave risk of death to a person or persons and kills for essentially no reason, or upon slight or insufficient provocation without knowing or caring who the victim may be, Longinotti, 46 Colo, at 181, 102 P. at 168, the state is justified in treating the crime as firstrdegree murder. The amended statute emphasizes those crucial factors which make extreme indifference murder a more serious crime than second-degree murder, even assuming an identical mens rea requirement for both crimes.
Rather than attempting to define a heightened degree of awareness more culpable than acting “knowingly,” and at the same time avoiding the confusion which has accompanied the division of “intentionally” into specific and general categories, the legislature has attempted to proscribe a kind of knowing, killing conduct which it considers to be of greater social consequence and which merits greater punishment. The extreme indifference murder charge is more blameworthy than the second-degree murder charge, because the defendant’s conduct demonstrates that his lack of care and concern for the value of human life generally are extreme, and that the circumstances of his actions evidence that aggravated recklessness or cold-blood-edness which has come to be known as “universal malice.” See Czajkowski, 193 Colo. at 356, 568 P.2d at 26; Haymaker, 716 P.2d at 118 (“[Gjeneral Assembly may establish more severe penalties for acts that it believes have greater social consequence.”).
Moreover, defining a prohibited act in terms of its circumstances is so well accepted that the mens rea “knowingly” is statutorily defined according to whether it applies to conduct, result, or circumstances. See § 18-1-501(6). The legislature could have drafted section 18-3-102(l)(d) in such a way that the circumstances or nature of the proscribed conduct were expressed by specific examples, i.e., death by bombing, torture, or games of Russian Roulette. Instead, the legislature has opted for language “sufficiently general to address the essential problem under varied circumstances and during changing times.” People v. Allen, 657 P.2d 447, 449 (Colo.1983). We have generally approved the use of such open-ended language, provided the statute also contains a culpable mental state required for conviction. See, e.g., Moore, 674 P.2d at 358 (“of such nature, packaging, or appearance as to lead a reasonable person to believe....” sufficiently defines counterfeit drugs); People v. Beaver, 190 Colo. 554, 549 P.2d 1315 (words *1233 “of sufficient consequence reasonably calculated to prevent resistance” provides a fair description of the conduct forbidden and persons of ordinary intelligence can comprehend its meaning and applications.).
Further, the circumstances under which an act is performed may have a significant effect upon the legal sanction imposed. If, for example, a person “knowingly causes the death of another person under circumstances where the act causing the death was performed upon a sudden heat of passion,” he is guilty of manslaughter rather than first-degree murder under the Colorado Criminal Code. See § 18-3-104(l)(c).
A comparison of the two statutes reveals that extreme indifference murder contains an element in addition to those required for second-degree murder. A person commits the crime of extreme indifference murder if: (1) under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally; (2) he knowingly engages in conduct which creates a grave risk of death to a person, or persons, and (3) thereby causes the death of another. § 18-3-102(l)(d). By comparison, a person commits the crime of second-degree murder if he: (1) knowingly causes the death of a person, but (2) not after deliberation. § 18-3-103(l)(a).
The presence of this additional element in the definition of extreme indifference murder requires the prosecution to prove that the defendant’s conduct manifested extreme indifference to the value of human life generally, and that the circumstances evidence an attitude of universal malice. § 18-1-503(4); § 18-1-501(6). In Marcy, we held that both crimes are complete as long as the actor knowingly acts in the proscribed manner and causes the death of another, even though the person killed was not the person against whom the criminal conduct was directed. 628 P.2d at 79. As amended, section 18-3-102(l)(d), extreme indifference murder is committed only if the killing conduct is of a type which is not directed against a particular person at all.
It is rational for the legislature to differently punish knowing conduct of a type directed against a particular individual, and knowing, killing conduct — aggravated recklessness or cold-bloodedness — which by its very nature evidences a willingness to take human life without regard to the victim. A more specific actus reus is sufficient to distinguish prohibited conduct. See, e.g., Czajkowski, 193 Colo, at 352, 568 P.2d at 23 (theft of auto parts more specific than theft generally; no violation of equal protection to give one greater sanction).
In summary, we uphold the constitutionality of section 18-3-102(l)(d), Colorado’s extreme indifference murder statute. As amended, the statute, proscribing as it does knowing, killing conduct “under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally,” is qualitatively and categorically distinct from the kind of knowing killing proscribed by the second-degree murder statute. In returning the statute in 1981 to its common law and historical roots of cold-bloodedness or aggravated recklessness, the legislature has provided an intelligible standard of criminal culpability. A person of average intelligence can reasonably distinguish this offense from conduct proscribed by the second-degree murder statute. That is all that is necessary to distinguish the statutes in the wake of an equal protection challenge. Id. at 80-81.
Because a single criminal transaction may give rise to the violation of more than one statute, People v. Westrum, 624 P.2d 1302, 1303 (Colo.1981); People v. McKenzie, 169 Colo, at 529, 458 P.2d at 235, it is for the trier of fact to decide whether the facts of the individual case justify a finding that the defendant is guilty of extreme indifference, as opposed to second-degree, murder. See Model Penal Code § 210.2(1), comments at 22. In an extreme indifference murder case, the jury must make judgments of a distinct kind beyond what is necessary for a verdict of guilty to second-degree murder. It must be persuaded beyond a reasonable doubt that the degree of indifference to human life generally shown by the defendant in committing murder was extreme, and committed under circum *1234 stances evidencing universal malice. See Marcy v. People, 628 P.2d 69, 83 (Rovira, J., dissenting).
A variety of factors may exhibit a legally sufficient degree of cold-bloodedness or aggravated recklessness to support the jury’s finding that the defendant’s conduct should be penalized as first-degree murder under the extreme indifference statute. The nature, duration and intensity of the actor’s culpable state of mind, his manner of killing, his relationship to the victim(s), and the presence or absence of mitigating factors — may all affect a jury's determination of whether the extreme indifference statute fits the facts of a particular case.
We reverse the district court rulings, and remand both cases with directions to reinstate the extreme indifference counts in the informations.
QUINN, C.J., dissents.
ERICKSON, J., joins in the dissent.

. Murder in the first degree is a class 1 felony, section 18-3-102(3), 8B C.R.S. (1986), and carries a penalty of life imprisonment or death, section 18-l-105(l)(a), 8B C.R.S. (1986). Murder in the second degree is a class 2 felony, section 18-3-103(3), 8B C.R.S. (1986). If the second-degree murder was committed after July 1, 1985, it carries a presumptive range of the penalty of imprisonment from 8 to 24 years, plus one year of parole, with a possibility of a fine in addition to, or in lieu of, any sentence of imprisonment, as well as provisions for reducing the minimum time served to 4 years in the case of extraordinary mitigating circumstances, and for increasing the maximum to 48 years in the case of extraordinary aggravating circumstances. §§ 18 — 1—105(l)(a)(III), (IV), and (l)(b)(III), (6), 8B C.R.S. (1986).

. See, e.g., C.R.S.1963, § 40-2-3; C.R.S.1953, § 40-2-3; 1935 C.A.S., Ch. 48, § 32; C.L.1921, Ch. 153, § 6665; C.S.A.1911, Ch. 35, § 1624; R.S.1908, Ch. 35, § 1624; M.A.S.1891, Ch. 36, § 1176.
The 1963 revision of the C.R.S., for example, defines murder as "the unlawful killing of a human being with malice aforethought, either expressed or implied." C.R.S. § 40-2-1. Express malice signified "deliberate intention unlawfully to take away the life of a fellow crea *1228 ture....” § 40-2-2. Malice shall be implied, on the other hand, "when all circumstances of the killing show an abandoned and malignant heart.” § 40-2-3(1). Moreover, the statute also provided that "[ajll murder ... perpetrated by any act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree.” Id.

. The four concepts are "purposely [or intentionally]," "knowingly,” "recklessly” and "negligently." See § 18-1-501(3) to (6), 8B C.R.S. (1986).

. See, e.g., People v. Curtis, 627 P.2d 734 (Colo.1981); People v. Gurule, 628 P.2d 99 (Colo.1981); People v. Lee, 630 P.2d 583 (Colo.1981).