[No. 6558.]

## LONGINOTTI v. THE PEOPLE.

1. **New Trial—Misconduct of Counsel**—Where, in argument, counsel makes an unwarranted assertion, calculated to prejudice the jury, the court, on request, should correct it, and properly instruct the jury, suspending the argument, if necessary.—(175, 182)

Doubted whether the intervention of the court in such case is an instruction, within the meaning of the statute, which requires instructions to the jury to be in writing.—(182)

2. **Criminal Law—Murder—Degree**—The statute declaring that homicide "by any act greatly dangerous to the lives of others, and indicating a depraved mind, regardless of human life," shall be deemed murder in the first degree, does not include every intentional homicide. The act must be not only dangerous to the person killed, but an act greatly dangerous to the lives of other persons, and disclosing universal malice:—(181)

3. **Statutes Construed**—Rev. Stats., § 1624 (Mills' Stats., § 1176).—(181)

*Error to Denver District Court*—Hon. GREELEY W. WHITFORD, Judge.

Mr. RALPH TALBOT, for plaintiff in error.

Hon. John T. Barnett, attorney general, Mr. James M. Brinson, deputy attorney general, Mr. George Stidger, district attorney, Mr. Horace Phelps, and Mr. John H. Chiles, for the people.

Chief Justice Steele delivered the opinion of the court:

The defendant, having been convicted of murder in the first degree, asks this court to review the judgment and proceedings of the district court of the City and County of Denver, alleging error in many instances, as set forth in the assignments. The jury in rendering the verdict fixed the penalty at death.

We shall confine our discussion to the questions raised by assignment number 14. We are not prepared to say, however, that, upon a careful consideration of the other assignments, we should hold them unworthy of consideration, but the cursory investigation given of the matters involved, aside from those embraced in assignment number 14, incline us to now believe that, but for the error of the court in declining to correct the misstatement of the district attorney, we should have affirmed the judgment.

We regard the action of the district attorney in making this statement, and the action of the court in declining to correct it, so erroneous and prejudicial to defendant that our duty requires us to reverse the judgment. The court had instructed the jury in the language of the statute as to the degrees of murder, and had included the clause: "or perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life, shall be deemed murder of the first degree." The deputy district attorney, in his closing remarks, said; " 'All murder perpetrated by an act greatly dangerous to the lives of others and indicating a depraved mind regardless of human life, shall be

deemed murder of the first degree.'  And the aiming of the gun and firing it at the deceased was greatly dangerous to the life of the deceased, taking his life; and I say that discharging a gun at another is an act greatly dangerous to the lives of others, and indicates a depraved mind, regardless of human life, and is murder of the first degree.  That is the instruction, and that is the law, and the court tells you right here that is the law.''

Counsel for defendant thereupon objected, and requested the court to correct the district attorney, and to instruct the jury as to the meaning of the statute.  This the court refused, stating that counsel having asked the court to instruct the jury orally, it cannot be entertained by the court.  The defendant thereupon excepted.

The statement made by the district attorney is certainly not the law.  By declining to direct the jury that the district attorney's version of the instruction was incorrect, the court permitted the jury to adopt the district attorney's version of the instruction, and we must therefore determine whether the words in the statute ''greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life,'' apply to a case such as this, where the circumstances of the killing show that the accused intentionally took the life of the deceased, and that in so doing the life of no other person was placed in jeopardy.

The statute, in so far as it defines murder in the first degree, is as follows:  ''All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of willful, deliberate and premeditated killing'';

2.  ''Or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary'';

3. "Or perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who is killed";

4. "Or perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life, shall be deemed murder of the first degree."

The numbers do not appear in the statute.

The deceased and the accused were standing on a street corner; they were quarreling, and were but a few feet apart, when the accused, deliberately and intentionally, shot and killed the deceased. There was nothing in the act of the accused that can be regarded as "greatly dangerous to the lives of others." It was, of course, greatly dangerous to the life of the deceased, but the statute does not include in its definition of murder in the first degree every act that is dangerous to the life of the person killed. Every act that results in the death of a person is greatly dangerous to the life of such person, but the statute intended that there should be an act which shows the accused to have had a depraved mind, regardless of human life, and is intended to include those cases where a person has no deliberate intention to kill any particular individual. In other words, when a person kills another by an act which is greatly dangerous to the lives of others, and which shows a depraved mind regardless of human life, he is guilty of murder in the first degree; not because he has atrociously murdered a particular individual, but because his act has evinced universal malice, a malice against mankind in general.

In this case the murder must fall, if murder in the first degree, under the first clause of the section, which defines murder in the first degree as "murder

which shall be perpetrated  *  *  *  by any kind of willful, deliberate and premeditated killing.''

The New York statute contains practically the same words as those employed in the fourth clause of our statute.  In the case of *Darry v. The People,* reported at page 120 of volume 10 of the New York Reports, the facts were, substantially, that the accused had, after he and his wife had retired to bed, beat her with his fists in the pit of the stomach, that this was repeated on the two following nights, and that, on one of these nights, he struck her on the head with a chair.  A surgeon testified that her death was caused by the blows upon the stomach.  The court instructed the jury that, if the injuries were perpetrated by such acts as were imminently dangerous to the life of the deceased, and evincing on the part of the prisoner a depraved mind regardless of human life, although without any premeditated design to effect the death of the deceased, then the offense would come within the statute defining the crime of murder.  The accused was found guilty. The court of appeals reversed the judgment.  In the course of his opinion, Mr. Justice Sheldon said:

''For these reasons I am entirely satisfied that this subdivision was designed to provide for that class of cases, and no others, where the acts resulting in death are calculated to put the lives of many persons in jeopardy without being aimed at any one in particular, and are perpetrated with a full consciousness of the probable consequences.  Such acts may well be said to evince that reckless disregard of and indifference to human life, which is fully equivalent to a direct design to destroy it.  The moral sense of mankind distinguishes between acts of this sweeping and widely dangerous character and ordinary cases of individual homicide, and so, in my judgment, does the statute.

But there is an additional reason for putting this construction upon the subdivision in question. If it can be so construed as to include the case at bar, and others of a similar description, we are left wholly without any line of distinction between murder and manslaughter, except the loose and uncertain opinion of a jury as to whether the act which produced death did or did not evince a "depraved mind, regardless of human life." There is scarcely a case of manslaughter which, upon this construction, may not be brought within the definition of murder, and punished as such, provided a jury can be found to say that the act which produced death evinced a "depraved mind, regardless of human life"; because the other clause, to wit, "imminently dangerous to others," if it can apply to this, would apply to every case of homicide, as the result would always prove the imminently dangerous nature of the act; and because, upon this construction, cases of homicide committed unintentionally, in the heat of passion, would not be excluded, as such a case might very well evince a depraved mind, regardless of human life, in the opinion of the jury."

Mr. Justice Denio said: "No one will deny but that the second subdivision of the 5th section very accurately described the particular instance of murder just referred to; but the question is whether it is not limited to that, and whether it fairly extends to cases where the intention and the act refer only to the person killed; where the evil intention, whether more or less wicked, has for its object the party who ultimately becomes the victim. The language does not seem to me designed to embrace the last mentioned case. In the first place, the act causing death must be imminently dangerous to others. Why should the greater or less degree of danger be an ingredient, when the case supposes that the party

against whom it was directed, and for whom it was intended, was killed by it? It must be dangerous to others. The plural form is used; and, though I am aware that, by a general provision of the Revised Statutes, the plural may be construed to include the singular, I conceive that, where a precise definition was intended, and where the distinction between general and particular malice must have been in the mind of the legislature, the case of imminent danger to the person killed would have been specified had it been intended to embrace it. The act must evince a depraved mind, *regardless of human life.* These words are exactly descriptive of general malice, and cannot be fairly applied to any affection of the mind having for its object a particular individual. They define general recklessness, and are not pertinent to describe cruelty to an individual. The act by which the death is effected must *evince* a disregard to human life. Now, a brutal assault upon an individual may evince animosity and hate towards that person, and a cruel and revengeful disposition, but it could not properly be said to be evidence of a recklessness and disregard of human life generally. * * * Upon the most careful and anxious examination of the provision, I am entirely satisfied that it cannot, without violence to the intention of the legislature as evinced by the language, be applied to the case of homicide resulting from a direct assault by one person upon another."

The Alabama statute provides that: "Every homicide * * * perpetrated by an act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life," is murder in the first degree.

In *Mitchell v. State*, 60 Ala. 26, Mr. Justice Stone, delivering the opinion of the court, said:

"The act, to come within this class, must be greatly dangerous to the lives of others; must be of such a character as to evidence—prove—that the offender had a depraved mind, regardless of human life; and must be without any preconceived purpose to deprive any particular person of life. If there was such a preconceived purpose to deprive a particular person of life, the offense would fall under the first or third of the above classes, dependent on the further inquiry, whether the offender killed the person intended or another. It will be observed, however, that this fourth class omits all mention of the words, 'malice aforethought,' 'formed design,' 'willful,' 'deliberate,' 'malicious,' 'premeditated,' 'unlawfully and maliciously,' some of which are found in all the common-law definitions of murder, save that from universal malice. If a blow or injury, intentionally aimed and inflicted on a particular person, the act being greatly dangerous to life, and itself evidencing a depraved mind regardless of human life, be ruled to be murder in the first degree, then this clause fixes a much lower standard of evidential requirement, than do the classes one and three above mentioned. And this is all the more manifest, when we reflect that this clause dispenses with all preconceived purpose to deprive any particular person of life. A blow or injury, unlawfully and intentionally inflicted on a person, by an act greatly dangerous to life, and actually producing death, under such circumstances as to evidence a depraved mind, regardless of human life, coud not be inflicted without a preconceived purpose to deprive some particular person of life. The two positions are incompatible. We think the legislature, in this clause, intended to raise to the

high grade of murder in the first degree those homicides which are the result of what is called 'universal malice.' By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, 'willful,' 'deliberate,' 'malicious' and 'premeditated,' which characterize the first class of murder in the first degree."

To the same effect are the cases, *Jewell v. Territory*, 4 Ok. 53; *Golding v. State*, 26 Fla. 530.

From these authorities, it seems that murder, as defined by the fourth clause of our statute, is such as is committed by an act greatly dangerous to the lives of persons other than the one killed, and showing a reckless disregard of human life; and it therefore does not include a case such as we have before us, where the killing results from the intentional shooting of the individual slain, and there is no element of what is termed universal malice shown. We should have so held without the aid of the authorities cited, for the language of our statute permits no other construction, and it is, in effect, the language of the common law, from which our statute is taken.

The court, in declining to correct the district attorney, said: "Counsel having asked the court to instruct the jury orally, it cannot be entertained by the court."

The record does not disclose that counsel requested an oral instruction; he requested the court to correct the district attorney, and instruct the jury as to the proper construction of the statute. When the course of a trial is interrupted because of differ-

ence of opinion between counsel, it is very doubtful whether the act of correcting counsel, and directing the jury with reference to an instruction, can be termed an instruction within the meaning of a statute which requires instructions to be in writing. But whether it is or is not to be so regarded, the district attorney, having made an unwarranted statement, the court, if necessary to properly correct it, should have suspended the trial and instructed the jury so as to avoid the effect of the district attorney's statement. Furthermore, if counsel had requested an oral instruction, and if the court had correctly instructed the jury upon the point in controversy, the defendant could not have predicated error upon the giving of an oral instruction at his request.

The judgment is reversed.              *Reversed.*

Mr. Justice Bailey and Mr. Justice White concur