## No. 26988

## The People of the State of Colorado v. William Eugene Jones

(565 P.2d 1333)

Decided May 31, 1977.                    Rehearing denied July 18, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joseph M. Goldhammer, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Norman R. Mueller, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant appeals his conviction of first-degree murder under 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(d).[1] We find his contentions of error to be without merit, and therefore affirm.

The defendant had gone to pick up a girl friend at her duplex apartment. When the friend did not answer the door, the defendant entered into a conversation with the victim, who lived in the basement unit of the apartment building. The victim accepted the defendant's invitation to go out for a drink. They were seen at a neighborhood bar, apparently having a good time. They returned to the victim's apartment shortly before

---

[1] Now section 18-3-102(1)(d), C.R.S. 1973.
"(1) A person commits the crime of murder in the first degree if:
. . . .
"(d) Under circumstances manifesting extreme indifference to the value of human life, he intentionally engages in conduct which creates a grave risk of death to a person other than himself and thereby causes the death of another."

midnight. The victim's roommates had already retired. One of the roommates and her boyfriend testified to hearing two persons enter the apartment, hearing the victim conversing with a man in the living room, and then hearing the victim's muffled screams. The roommate rushed into the living room and saw the defendant kneeling over the victim's body, holding his hand over her mouth to muffle the screams, and pulling a knife out of her chest. The defendant remained in that position for a short while and then ran out of the apartment. The testimony of the other roommates and persons in the building as to the time of the noises coincided with that of the first roommate.

The police were given a description of the defendant, his car, and the direction in which it was headed when last seen. Within minutes, the police had spotted the car and stopped it. The defendant's clothes and hands were covered with blood, there were blood spots on the car, and a bloody knife was found in the front seat of the car. The defendant was taken to the police station where, after being advised of his rights and refusing a lawyer, he was interrogated, and he made an oral statement. A police lieutenant testified at the trial, with the help of notes he had taken during the interrogation, that the defendant had said he hadn't meant to hurt the victim.

The defendant's former girl friend, called as a witness for the People, testified that the murder weapon resembled a steak knife missing from a set in her possession. On cross-examination, the defense tried to show that the witness, who had recently broken off with the defendant after a five-year relationship, was biased against the defendant. On redirect examination, the prosecution established that one of the reasons for the breakup was her fear of the defendant. On recross-examination, the defense attacked the witness' credibility. The defense introduced into evidence the witness' "dear John" letter to the defendant. The witness made no reference to her fear of defendant in the letter. On redirect examination, the prosecution elicited from the witness details of two separate occasions where the defendant had displayed extremely hostile and aggressive tendencies to the witness. She testified that at one time he tried to strangle her and, at another, he came at her with a knife in his hand. The defense counsel again vehemently attacked the witness' credibility.

The defendant took the witness stand in his own defense. He testified that he had not entered the apartment with the victim. He also testified that, as he was leaving, he saw a man run away from the apartment. The defendant entered the apartment with trepidation, fearing something was wrong; found the victim with a knife in her chest; removed the knife; and then ran away, nauseated at the sight of blood. He admitted that he owned the knife but stated it had been stolen from his car earlier that day. The defendant also gave his version of the incidents to which his former girl friend had testified. The defense called six character witnesses to complete its case.

The defendant contends that the following errors require the reversal of his conviction: (1) the first-degree murder statute unconstitutionally violates his rights to equal protection because it is indistinguishable from 1971 Perm. Supp., C.R.S. 1963, 40-3-104(1)(a), reckless manslaughter,[2] and 1971 Perm. Supp., C.R.S. 1963, 40-3-105(1)(a), criminally negligent homicide;[3] (2) the evidence was insufficient to support the verdict of first-degree murder; (3) the police lieutenant should not have been permitted to testify from his notes absent proper foundation of past recollection recorded; and if it was proper, the defendant should have been allowed to introduce the notes into evidence; (4) the prosecution was permitted to impeach the defendant's character before he had placed it in issue; and (5) the trial court erred in refusing to give the defendant's proposed instructions.

I.

■ The defendant contends that the first-degree murder statute is unconstitutional in that it provides greater penalties than those provided in the reckless manslaughter and criminally negligent homicide statutes without differentiating the conduct defined as first-degree murder from that defined as reckless manslaughter or criminally negligent homicide. The defendant would have us analogize this case to our decision in *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). In *Calvaresi*, we held the reckless manslaughter statute unconstitutional because its standard of culpability was indistinguishable from that required for criminally negligent homicide, a lesser crime. The defendant contends that the reasoning in *Calvaresi* applies to this case because the standards of culpability for first-degree murder and reckless manslaughter[4] are also indistinguishable.

We reject the defendant's argument. Our decision in *Calvaresi, supra*, has no bearing on this defendant because he was not convicted of reckless manslaughter. *Cf. People v. Webb*, 189 Colo. 400, 542 P.2d 77 (1975).

The statutes dealing with first-degree murder and criminally negligent homicide require distinctly different culpable mental states. To be guilty of criminally negligent homicide, the defendant must fail to perceive a substantial and unjustifiable risk that a certain result will occur. The risk must be of such a nature that the defendant's failure to perceive it constitutes a gross deviation from a reasonable person's standard of care. Section 18-1-501(3), C.R.S. 1973. The defendant's guilt stems from his

---

[2]Now section 18-3-104(1)(a), C.R.S. 1973.
[3]Now section 18-3-105(1)(a), C.R.S. 1973.
[4]Conscious disregard of a substantial and unjustifiable risk which is of such a nature as to be a willful and wanton deviation from a reasonable person's conduct in the same situation. *See* section 18-1-501(8), C.R.S. 1973.

culpable failure to perceive the risk. In contrast, section (1)(d) of the first-degree murder statute requires a defendant to "intentionally engage in conduct which creates a grave risk of death to another person." Here the defendant's guilt stems from his intentional conduct despite his conscious awareness of the risk.

The key difference between the two statutes is that section (1)(d) of the first-degree murder statute requires that the defendant act ". . . under circumstances manifesting extreme indifference to the value of human life. . . ." In *People by and through Russell v. District Court,* 185 Colo. 78, 84, 521 P.2d 1254, 1257 (1974), we held that "extreme indifference" is clearly more culpable than the "conscious disregard of a substantial and unjustifiable risk" standard of the reckless manslaughter statute and that section (1)(d) of the first-degree murder statute is not void for vagueness.

The standards of culpability in the two statutes are distinct enough to be intelligently understood and applied. Therefore, the defendant was not denied equal protection of the law.

## II.

The defendant argues that even if the two statutes are distinguishable, the evidence was insufficient to support the jury's verdict. He bases this contention on the grounds that the facts of the case do not evince the defendant's depraved mind or universal malice.[5] We reject this argument.

To agree with the defendant, we would have to construe section (1)(d) of the first-degree murder statute as prohibiting conduct that greatly endangers many people as opposed to a single person. The statute is not that exclusive; in fact, it refers to "conduct which creates a grave risk of death to *a person.* . . ." (Emphasis added.)

As to the question of sufficiency of evidence, the evidence must be viewed in a light most favorable to the prosecution's case, including all reasonable inferences which may be drawn therefrom. *Dodge v. People,* 168 Colo. 531, 452 P.2d 759 (1969). Tested in this fashion, the answer is that the evidence was sufficient.

## III.

The defendant argues that the trial court erred in admitting the police lieutenant's testimony and in refusing to permit the defendant to introduce the lieutenant's notes into evidence. We find both of these contentions to be without merit.

---

[5]The old statutory definition of murder, a homicide "perpetrated by any act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life," C.R.S. 1963, 40-2-3, carried with it the theory of "universal malice," *Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909). Universal malice is evinced by acts which are "calculated to put the lives of many persons in jeopardy without being aimed at anyone in particular." *Id.* at 177, 102 P. at 167. The defendant argues that the only way to distinguish section (1)(d) of the first-degree murder statute from criminally negligent homicide is to include universal malice in the culpability required for murder.

■ First, the lieutenant referred to his notes only twice during direct examination and only at the prompting of defense counsel on cross-examination. The trial court has discretion to measure the extent to which a witness may refer to written notes. *Montgomery v. Tufford*, 165 Colo. 18, 437 P.2d 36 (1968). The trial court, under the circumstances, did not abuse its discretion.

■ We find no abuse of discretion in the trial court's refusal to allow the witness' notes into evidence. The defendant's objective was to allow the jury to see the different colored inks and alleged differences in handwriting. However, defense counsel extensively explored these questions on cross-examination and thus received the eqivalent impeachment effect that admitting the notes into evidence might have had. *People v. Lopez*, 182 Colo. 152, 511 P.2d 889 (1973).

IV.

The defendant argues that the trial court erred in allowing the defendant's former girl friend, a prosecution witness, to testify concerning her fear of the defendant. The defendant contends that such evidence was improper because it attacked his character before the defendant put it in issue.

■ We find no error in admitting this testimony. Admissibility of evidence turns on the purposes for which it is being introduced. The district attorney elicited the subject testimony on redirect examination to counter defense counsel's cross-examination on the witness' possible bias. *Abeyta v. People*, 156 Colo. 440, 552, 400 P.2d 431, 432 (1965). Moreover, the defendant did not object contemporaneously and thereby has waived his right to have this issue considered on appeal. *See People v. Vigil*, 180 Colo. 104, 502 P.2d 418 (1972) and the cases cited therein.

V.

Finally, the remaining contentions of the defendant are without merit. The judgment is affirmed.