The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Rory Franco ATKINS, Defendant–Appellant.

No. 89CA0950.

Colorado Court of Appeals, Div. IV.

June 4, 1992.

As Modified on Denial of Rehearing Aug. 20, 1992.

Certiorari Denied Feb. 1, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Rory Franco Atkins, appeals the judgment of conviction entered upon a special jury verdict finding him guilty of murder in the first degree, based upon both extreme indifference murder and murder after deliberation. He contends, among other things, that reversal is required because these two special findings are inconsistent and, in addition, that there was insufficient evidence to support a finding of extreme indifference murder. We agree that the special findings of the jury are logically inconsistent. However, we conclude that, under the circumstances of this case, such inconsistency is not prejudicial to defendant, and since defendant was sentenced only for the perpetration of a single crime, we affirm the judgment of conviction of first degree murder without addressing the question of the sufficiency of the evidence to support the finding of extreme indifference murder.

On the date of the killing, defendant spent much of the day drinking and socializing with friends. Throughout the day, he had in his possession a .22 caliber pistol and a bag of bullets.

In the early evening, defendant went with two friends to drive two teenage girls to their home. Testimony indicated that, during the drive, defendant stated that he did not like individuals who belonged to the "Crips" gang. He said, in fact, that he wanted to shoot a "crab," a derogatory slang term for a Crips gang member.

After taking the two girls to their home, defendant and his two companions noticed two other girls walking along the sidewalk, and they stopped their vehicle to speak with them. A young man was walking a few feet behind the girls; he had a blue bandanna in his back pocket, which in gang culture is a symbol of membership in the Crips gang.

Without warning, the defendant called out to this young man, "Yo, blood, are you a crab?" And, without waiting for a response, he aimed his gun at the victim and shot him in the chest, causing a mortal wound.

I.

A.

■ Underlying defendant's principal claims of error is a single substantive issue. That issue is whether the present extreme indifference murder statute, § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B), is applicable to the killing of a single individual, if at the time of the killing the perpetrator possesses the *mens rea* described in the murder after deliberation statute, § 18–3–102(1)(a), C.R.S. (1986 Repl.Vol. 8B). We conclude that, if the perpetrator possesses the specific intent to kill the individual whose death occurs as a result of his actions, the perpetrator cannot also be convicted under the extreme indifference murder statute.

Under § 18–3–102(1)(a), a person commits first degree murder by killing a person "after deliberation and with the intent to cause the death" of that person or another. To commit first degree murder in this manner, therefore, requires the specific intent to kill a particular individual.

In contrast, § 18–3–102(1)(d), as it has existed since its last amendment in 1981, Colo.Sess.Laws 1981, ch. 212 at 972–973, provides that a person commits murder in the first degree if:

> under circumstances *evidencing an attitude of universal malice* manifesting extreme indifference to the value of human life *generally*, he knowingly engages in conduct which creates a grave risk of death to a person, *or persons*, other than himself, and thereby causes the death of another. (emphasis indicates 1981 additions)

There are at least two distinguishing features between murder after deliberation and extreme indifference murder.

First, while murder after deliberation requires a specific intent to cause death, the extreme indifference murder statute contains no such element. Rather, the conduct proscribed by § 18–3–102(1)(d) is extreme recklessness, evidencing an indifference to human life generally. *People v. Jefferson*, 748 P.2d 1223 (Colo.1988). A typical example of such conduct would be the firing of a gun into a crowd of people without any intent to kill any specific individual. *See People v. Jefferson, supra.*

Second, since the 1981 amendments to § 18–3–102(1)(d), the extreme indifference murder statute has expressly incorporated the concept of "universal malice." This is a concept that was also found to be present in some of Colorado's earliest "extreme indifference" or "depraved heart" statutes. *See Longinotti v. People*, 46 Colo. 173, 102 P. 165 (1909). Indeed, these 1981 amendments were intended to require the present extreme indifference murder statute to be interpreted in essentially the same manner as were these earlier statutes. *People v. Jefferson, supra.*

The term "universal malice" is one:

> used to describe those acts greatly dangerous to the lives of persons *other than the one killed*, revealing a depraved mind, which do *not* include a killing from *intentional acts directed at the person slain.*

*People v. Jefferson, supra*, citing C. Torcia, 2 *Wharton's Criminal Law* § 78 at 366 (14th ed. 1979) (emphasis supplied).

Thus, murder after deliberation is committed only if the perpetrator's malice is directed toward a single, identifiable individual, *i.e.*, its focus is singular in nature. Extreme indifference murder, on the other hand, now requires proof of a malice against human life "generally," *i.e.*, a "universal malice" not directed against a single individual.

Under earlier statutes incorporating the concept of universal malice, a conviction for first degree murder based upon what is now called extreme indifference could not be sustained if the evidence disclosed that the perpetrator intended the death of the victim. *Longinotti v. People, supra* (such statutes were intended to apply only in those instances in which "a person has no deliberate intention to kill any particular person"; therefore, they do "not include a case ... where the killing results from the intentional shooting of the individual slain, and there is no element of what is termed universal malice shown"). *See also People ex rel. Russell v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974) (the term "extreme indifference to human life," by its very definition, "does not address itself to the life of the victim, but to human life generally").

We conclude, therefore, that, if the evidence establishes that a perpetrator possessed the specific intent to cause the death of the person whom he killed, then the death of that individual cannot support a conviction under the extreme indifference murder statute. *Longinotti v. People, supra.*

This conclusion does not prohibit the People from charging that a defendant committed the crime of first degree murder under both statutes, as *alternative* theories. It does mean, however, that evidence

of the death of a single individual resulting from a defendant's acts cannot support a finding that the crime was committed in *both* ways. Hence, in those instances in which it may be appropriate to submit both theories to the jury for its determination, such submission must be accompanied by an instruction that the jury may convict of murder under either theory, but not under both.

Here, however, such an instruction was not given. On the contrary, the jury was expressly authorized to find that defendant committed first degree murder both after deliberation and with extreme indifference.

## B.

■ The jurors in this case determined, by their special findings, that defendant, at the time of the killing, possessed the specific intent to kill the victim. At the same time, however, they found that the victim's death resulted under circumstances indicating that defendant displayed "universal" malice, manifesting an indifference to human life "generally," which created a grave risk of death to other "person*s*." In our view, these findings are logically inconsistent.

In *People v. Jefferson, supra,* our supreme court, in distinguishing between extreme indifference murder and second degree murder under § 18–3–103, C.R.S. (1986 Repl.Vol. 8B), emphasized that:

> extreme indifference murder is committed *only* if the killing conduct is of a type which is *not* directed against a particular person at all. (emphasis supplied)

Hence, the determination here that defendant possessed the specific intent to kill the victim necessarily negated the existence of that aggravated recklessness, accompanied by universal malice, that is required to convict of extreme indifference murder. Conversely, the jury's simultaneous determination that the victim's death resulted from defendant's extreme, aggravated recklessness, accompanied by universal malice, necessarily negated the existence of any specific intent to kill a particular person. These findings are, by their nature, logically inconsistent.

*People v. Lowe,* 660 P.2d 1261 (Colo. 1983) does not dictate a different conclusion. The felony murder statute that was the subject of consideration in *Lowe,* § 18–3–102(1)(b), C.R.S. (1991 Cum.Supp.), requires no particular state of mind; it substitutes participation in a specified felony for the existence of an intent to kill; it requires no malice, either universal or singular. *People v. Scheer,* 184 Colo. 15, 518 P.2d 833 (1974); *People v. Priest,* 672 P.2d 539 (Colo.App.1983). Hence, a jury may, with no inconsistency, determine that an actor committed first degree murder during the commission of one of the specified felonies, but with a specific intent to kill, and return dual verdicts determining that he committed murder in both ways.

Such a conclusion, however, is not possible with respect to the two methods of committing first degree murder that are the subject of the charges here. If death results from the perpetrator's specific intent to kill, such death cannot be said to be the result either of extreme recklessness or of universal, rather than singular, malice. *People v. Longinotti, supra.* Hence, we conclude that the special findings of the jury here were inconsistent.

## C.

Prior Colorado jurisprudence upon inconsistent verdicts has concerned circumstances in which a verdict of not guilty on one count has necessarily impeached the same jury's verdict of guilty on another count, because both verdicts were based upon identical evidence. *See Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1969); *People v. Castenada,* 765 P.2d 641 (Colo. App.1988).

■ In these instances in which the inconsistency in the verdicts results from the jury's acceptance of the People's evidence for one count, as represented by its guilty verdict, but its rejection of that same evidence for another count, resulting in an acquittal, it has been concluded that the jury's acquittal verdict impeaches its verdict of guilt. Hence, in such cases, the judgment of conviction based on the latter

verdict must be set aside. *See Robles v. People, supra.*

The conclusion that such verdicts are repugnant is not grounded fundamentally upon any logical inconsistency, however. It is based upon the concept that a fact finder may not accept the same evidence for one count and reject it for another. *See People v. Strachan,* 775 P.2d 37 (Colo. 1989) (verdicts are inconsistent only if a not guilty verdict "necessarily determines that the evidence failed to establish a fact which is an essential ingredient of the offense" of which defendant was convicted); *Robles v. People, supra* (the inconsistency in the verdicts resulted from the fact that the "very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the robbery was the only evidence which could prove him guilty of conspiracy"); § 18–2–206(2), C.R.S. (1986 Repl.Vol. 8B).

■ Thus, even though they may be logically inconsistent, a jury verdict rendered in the penalty phase of a capital case under § 16–11–103, C.R.S. (1986 Repl.Vol. 8A) cannot serve as a basis for impeaching a verdict rendered in the guilt phase of that trial. *People v. Rodriguez,* 786 P.2d 472 (Colo.App.1989).

Courts in other jurisdictions are substantially uniform in agreeing that verdicts convicting a defendant of two or more crimes, in those instances in which the existence of an element of one of the crimes necessarily negates the existence of a necessary element of the other, are also inconsistent. *See generally* Annotation, *Inconsistency of Criminal Verdicts as Between Different Counts of Indictment or Information,* 18 A.L.R.3d 259 (1968). Hence, verdicts convicting a defendant both of common law theft and of theft by false pretenses, based upon the same transaction, for example, are inconsistent. *People v. Broome,* 21 A.D.2d 899, 251 N.Y.S.2d 747 (1964), *rev'd on other grounds,* 15 N.Y.2d 985, 260 N.Y.S.2d 6, 207 N.E.2d 603 (1965). *See also Thomas v. United States,* 314 F.2d 936 (5th Cir.1963), *cert. denied,* 375 U.S. 849, 84 S.Ct. 105, 11 L.Ed.2d 76 (1964).

However, many of these courts, while recognizing that verdicts of guilt of different crimes may conflict with each other, have nevertheless concluded that such inconsistency does not impugn both verdicts. Rather, these courts have concluded that, in the face of dual convictions that are facially inconsistent, a defendant suffers no prejudice from such inconsistency so long as he does not suffer dual penalties.

Thus, they have said that, while it is "better practice" for the trial court, upon receiving such inconsistent verdicts, to require the jury to reconsider the matter, even if such reconsideration is not directed, a logical inconsistency in two or more guilty verdicts does not require that they both be set aside—such occurrence requires only that the defendant receive but a single sentence. *Cross v. State,* 36 Md. App. 502, 374 A.2d 620 (1977), *rev'd on other grounds,* 282 Md. 468, 386 A.2d 757 (1978) (the threat posed by such inconsistent verdicts is not that the jury may have been confused, but that defendant may suffer double punishment). *Accord People v. Broome, supra; People v. Stoltz,* 196 Cal. App.2d 258, 16 Cal.Rptr. 285 (1961); *Allison v. Mayo,* 158 Fla. 700, 29 So.2d 750 (1947); *People v. Lymore,* 25 Ill.2d 305, 185 N.E.2d 158 (1962), *cert. denied,* 372 U.S. 947, 83 S.Ct. 941, 9 L.Ed.2d 972 (1963); *State v. Meshaw,* 246 N.C. 205, 98 S.E.2d 13 (1957); *contra State v. Speckman,* 326 N.C. 576, 391 S.E.2d 165 (1990) (entry of single judgment does not render inconsistent verdicts harmless); *Commonwealth v. Bitler,,* 133 Pa.Super. 268, 2 A.2d 493 (1938).

■ At least within the context of the specific facts presented by this case, we conclude that this analysis is equally applicable here and that the inconsistency in the verdicts which we have determined to exist does not require the reversal of the judgment of conviction. We reach this conclusion for several reasons.

First, the inconsistency evident from the verdicts here, while a logical one, did not result from the jury's rejection of any of the evidence relied upon by the People for conviction. Indeed, both verdicts were nec-

essarily based upon the common finding that the defendant shot and killed a person with whom he had no previous contact. The only inconsistency results from the differing characterizations that may be placed upon that conduct, *i.e.*, whether it demonstrated deliberate action with a specific intent to kill that particular individual or whether such conduct constituted extreme recklessness demonstrating universal malice. *Either* characterization, however, would compel defendant's conviction of the crime of first degree murder.

Second, the special findings here do not address separate crimes. The statute describing murder after deliberation and that defining extreme indifference murder simply outline two alternative methods of committing the singular crime of first degree murder. *See People v. Lowe, supra.* Hence, the inconsistent verdicts here cannot result in conviction of more than a single offense or the imposition of more than a single punishment.

We note in this regard that the dictates of *People v. Lowe* were followed here in that only a single verdict form was submitted to the jury, requiring special findings on each of the two theories, and that defendant received but a single sentence. However, the mittimus reflects that he was convicted on two counts. In accordance with the mandate of *People v. Lowe*, this mittimus should be corrected by the trial court to reflect but a single conviction of first degree murder.

Finally, without regard to whether the evidence would support the jury's finding of extreme indifference, the record in this case contains overwhelming evidence to support the jury's finding of the existence of a specific intent to kill the victim. Shortly prior to the incident, defendant announced his intention to kill a member of the rival gang, the victim's apparel evidenced his membership in that gang, defendant specifically addressed the victim with respect to his alleged gang membership, he aimed directly at the victim and shot him at close range in the chest, and he later bragged about his accomplishment.

Accordingly, while we agree with defendant that the two special findings here were logically inconsistent, we also conclude that defendant was not prejudiced by this inconsistency. Further, having reached these conclusions, it is unnecessary for us to consider whether the special finding that defendant was guilty of extreme indifference murder was supported by the evidence.

## II.

Defendant also asserts that the trial court committed error with reference to the admission, and the refusal to admit, certain of his statements. We reject these assertions.

### A.

Defendant first argues that his videotaped statements made after the shooting should have been excluded under CRE 404(b). He contends that the videotape in which he discussed his gang activities and admitted his role in the shooting incident were improperly prejudicial. We disagree.

Under CRE 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith." However, evidence may be admitted to show "intent" or "knowledge." CRE 404(b).

In this case, the videotape was offered by the People to establish defendant's *mens rea* at the time of the shooting. The trial court admitted the videotape for this limited purpose and instructed the jury, both before and after the tape was played, that it was admitted only for the limited purpose of establishing defendant's state of mind on the night of the crime. Further, the jurors were told that they could not speculate whether defendant acted in conformity with his alleged gang activities and that defendant was to be tried only upon the offenses charged.

█ It is presumed, absent a contrary showing, that a jury understood and heeded a trial court's instructions. *Leonardo v. People,* 728 P.2d 1252 (Colo.1986).

Hence, under these circumstances, we conclude that the trial court did not abuse its discretion in allowing the jury to view the videotape.

### B.

Defendant further contends that the trial court erred in refusing to admit certain exculpatory statements made by him. We perceive no error.

A defendant's self-serving declaration is generally not admissible because there is nothing to guarantee its reliability. If this were not the case, a defendant could make exculpatory statements and thereby create his own favorable evidence. *People v. Abeyta*, 728 P.2d 327 (Colo.App.1986).

Here, defendant offered statements that he had made to several individuals after the shooting. These statements allegedly demonstrated that defendant was "sorry" that he had shot the victim and that he had not meant for the victim to die. Defendant maintains that these statements were exceptions to the hearsay rule as a statement against interest pursuant to CRE 804(b)(4).

While it is true that these statements were admissions of criminal liability, their attempted use was for the purpose of mitigating the first degree murder charge. Thus, looked at realistically, these statements were for, rather than against, defendant's penal interest. *See People v. Shields*, 701 P.2d 133 (Colo.App.1985).

### III.

Finally, we reject defendant's claim that the prosecutor made prejudicially improper remarks during his jury voir dire and in his closing argument.

The prosecutor's reference to the concept that all persons who have been convicted of crimes initially were clothed with the presumption of innocence, considered in context, did not depreciate the value of that presumption. It simply emphasized that the presumption may be overcome by the weight of the evidence. The comment was not improper.

Further, the prosecutor's reference to the victim's mother being unable to kiss her son anymore was not an inappropriate response to the emotional demonstration in which defendant and his mother had engaged in the presence of the jury at the end of his mother's testimony.

Most of the remarks now challenged by defendant drew no objection at the time. And, having reviewed the foregoing statements, as well as the others now criticized, we conclude that the trial court did not abuse its discretion in permitting such remarks. *See People v. Moody*, 676 P.2d 691 (Colo.1984).

The judgment is affirmed, and the cause is remanded to the trial court for correction of the mittimus in the manner described in this opinion.

STERNBERG and MARQUEZ, JJ., concur.