The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Kevin Jerome MOORE, Defendant–
Appellant.

No. 93CA0003.

Colorado Court of Appeals,
Div. I.

Aug. 25, 1994.

Rehearing Denied Oct. 20, 1994.

Certiorari Granted Sept. 25, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda C. Michow, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellee.

Chambers, Dansky and Hansen, P.C., Nathan Chambers, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Kevin Jerome Moore, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of manslaughter. He also seeks review of the 12–year sentence imposed by the trial court. We affirm.

Prior to the homicide, defendant and a group of his high school friends were occupying a street corner. Some of the youths picked a fight with several soldiers, and defendant was observed throwing punches in that altercation. Later, he kicked the door of the car in which the soldiers left the scene. A witness quoted defendant as stating at this point, "Let's fight, let's fight."

Shortly thereafter, defendant, along with at least one of his schoolmates, began to kick nearby newspaper stands. Defendant and his schoolmates were visibly upset and angry.

Approximately 30 minutes later, the victim and his friend, also soldiers, were walking along the street where defendant and his group had congregated. The victim's friend heard one of the young men ask them, "What are you guys doin' walkin' on our block?" The victim then received a blow in the back of the head and fell to the ground.

The victim's friend attempted to aid the victim but could not because he was attacked by some of the youths including defendant. Eventually, he fought his way to the victim who was lying on the ground unconscious.

At least five of the youths including defendant were still kicking the victim. The friend tried to push the assailants away and pleaded with them to stop. However, one of the assailants kicked the friend, causing him to fall on top of the victim. The kicking blows by defendant and others continued against the victim and there was some evidence that defendant kicked the victim again after the others had stopped. A witness testified that she pleaded with defendant to stop and he replied: "So, I don't care. If you want to, you can be next."

Ultimately, the assailants dispersed. The victim died from blunt trauma to the head caused by hemorrhaging inside his skull.

Defendant was charged with extreme indifference murder in the first degree and murder in the second degree. The jury was also instructed on manslaughter and criminally negligent homicide as lesser included offenses. As noted, defendant was convicted of manslaughter.

## I.

Relying on *People v. Jefferson*, 748 P.2d 1223 (Colo.1988), defendant first contends that the trial court committed reversible error by denying his motion for judgment of acquittal on the charge of extreme indifference murder because, he argues, there was insufficient evidence to support that charge. Specifically, defendant claims that the prosecution failed to prove "universal malice" because the "killing conduct" in this case was directed at a particular person, the victim.

In addition, and relying upon cases such as *Tate v. People*, 125 Colo. 527, 247 P.2d 665 (1952), defendant asserts that the error was not harmless because the jury's deliberations on the various lesser included charges including criminally negligent homicide likely produced a compromise verdict. We conclude that the trial court did not err in denying defendant's motion.

Section 18–3–102(1)(d), C.R.S. (1986 Repl. Vol. 8B) provides that a defendant commits first degree murder if:

> Under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself and thereby causes the death of another.

With reference to the component of universal malice, the *Jefferson* court, quoting *Longinotti v. People*, 46 Colo. 173, 102 P. 165 (1909), stated:

> By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim.

*People v. Jefferson, supra,* at 1228.

In discussing the constitutionality of the extreme indifference murder statute, our supreme court explained in *Jefferson* that:

> The intent of the legislature has always been to prohibit extremely reckless con-

duct, when accompanied by evidence of 'universal malice.'

*People v. Jefferson, supra,* at 1231.

By adding the words "universal malice" and "generally" to the statute in 1981, the *Jefferson* court perceived:

> [A]n unmistakable indication of the legislative intent to ... limit the application of extreme indifference murder to situations in which the actor demonstrates an indifference to human life generally, as distinguished from indifference to, or willingness to take, a particular human life.

*People v. Jefferson, supra,* at 1232.

Thus, the court held that the offense is committed under the current statute "only if the killing conduct is of a type which is not directed against a particular person at all" and that the General Assembly intended to adopt different penalties for "knowing conduct of a type directed against a particular individual [second degree murder], and ... killing conduct ... which by its very nature evidences a willingness to take human life without regard to the victim." *People v. Jefferson, supra,* at 1233.

The *Jefferson* court indicated that a variety of factors may exhibit a legally sufficient degree of aggravated recklessness to support a finding of extreme indifference murder:

> The nature, duration and intensity of the actor's culpable state of mind, his manner of killing, his relationship to the victim(s), and the presence or absence of mitigating factors—may all affect a jury's determination of whether the extreme indifference statute fits the facts of a particular case.

*People v. Jefferson, supra,* at 1234.

However, contrary to defendant's contention, we do not read *People v. Jefferson, supra,* as limiting the jury's consideration of this charge here to the evidence relative to the blows inflicted upon the victim by defendant immediately before the victim's death. Instead, under the circumstances of this case, we conclude that the jury could properly consider the conduct of defendant from and after the time when he and his companions took control of the street corner as bearing upon his state of mind, his reckless conduct, and as indicating his intent to take human life without provocation and without regard to who the victim might be.

■ As a result, and unlike in *People v. Atkins,* 844 P.2d 1196 (Colo.App.1992), here, there was evidence to support the charge. Specifically, the jury could have concluded that defendant had indiscriminately shoved, hit, kicked, and threatened one or more persons without provocation near the time of the victim's death, thus indicating excessively reckless conduct. Further, there was testimony that defendant had worked himself into a frenzy and that he did not know the victim or any of the other people he hit, kicked, or shoved, tending to establish his extreme indifference to the value of human life.

Viewing that evidence in a light most favorable to the prosecution, as we must, we conclude that the jury could well have found defendant guilty of the charge beyond a reasonable doubt. *See People v. Gonzales,* 666 P.2d 123 (Colo.1983); *People v. Braxton,* 807 P.2d 1214 (Colo.App.1990). Thus, the trial court did not err in denying defendant's motion.

## II.

Defendant contends that the court made various errors regarding jury instructions. Again, we find no merit in any of his contentions.

### A.

■ Defendant first asserts that the jury was wrongly instructed that second degree murder is a lesser included offense of extreme indifference murder. However, a division of this court held to the contrary in *People v. Rodriguez,* 888 P.2d 278 (Colo.App. 1994). We view that case as dispositive of defendant's contention.

### B.

■ Defendant further contends that the trial court committed reversible error when it failed to instruct the jury on the misdemeanor charge of third degree assault. While defendant concedes that the tendered instruction was submitted by trial counsel improperly as a lesser included offense, nev-

ertheless, he asserts that the instruction should have been given either as a lesser non-included offense or as a theory of the case instruction. We perceive no error in the court's ruling.

A court is required to give a lesser included offense instruction whenever there is a rational basis for the jury to acquit the defendant on the greater charge and convict him on the lesser offense. *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974). Likewise, in *People v. Skinner,* 825 P.2d 1045 (Colo. App.1991), a division of this court held that the same legal standard should be used to determine whether a lesser non-included instruction is appropriate.

Here, defendant proposed that the jury be given an instruction on third degree assault, which is defined as follows:

A person commits the crime of assault in the third degree if he knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon.

Section 18-3-204, C.R.S. (1986 Repl.Vol. 8B).

We agree with the trial court's conclusion that there was no rational basis upon which the jury could convict defendant of assault on the victim and acquit him of manslaughter. This is because the victim died from the injuries inflicted by defendant and his companions, and there was evidence both that defendant kicked the victim after his companions had stopped and that defendant's blows contributed to the cause of the victim's death.

On the other hand, to the extent that defendant characterized the instruction as a theory of the case, we conclude that this concept was already contained in the given theory of the case instruction.

## C.

In regard to defendant's contention that the trial court erred in failing to instruct the jury on the legal definition of "intentionally" in conjunction with the instruction on complicity, *People v. R.V.,* 635 P.2d 892 (Colo.1981) is dispositive.

## III.

Defendant next contends that the trial court improperly allowed evidence of defendant's other "bad acts" consisting of the assault which occurred approximately 30 minutes before the victim was assaulted. Again, we disagree.

Generally, evidence of independent wrongdoing or bad acts is inadmissible. *People v. Spoto,* 795 P.2d 1314 (Colo.1990). Such evidence is admissible, however, when it is an integral part of the criminal transaction and may be relevant for the fact finder to understand the context in which the alleged crime occurred. And, in such circumstances, the evidence is not subject either to the general rule that excludes evidence of prior criminality or to the procedural requirements of *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). *People v. Czemerynski,* 786 P.2d 1100 (Colo. 1990).

Absent a showing of abuse of discretion, a trial court's determination on the admissibility of evidence will not be reversed. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

Here, the court found the disputed testimony to be part of the *res gestae* of the criminal transaction. The record reflects no abuse of discretion by the court in that ruling.

Contrary to defendant's contention, the time interval did not preclude admission of this evidence. In this context, a division of this court has previously allowed evidence that occurred "within hours" to be admitted as "contemporaneous." Contemporaneous does not mean simultaneous. *See People v. Tauer,* 847 P.2d 259 (Colo.App. 1993).

## IV.

Defendant also argues that his constitutional right to a jury of his peers was abridged. We are not persuaded.

Defendant's original court-appointed counsel filed a motion to change venue. Defendant now claims that, although he was represented by counsel, at no time was inquiry

made as to whether defendant wished to have his trial moved. Following an extensive hearing, the district court ordered that venue be moved from El Paso County to Larimer County. Five months later, defendant, through new counsel, filed a motion to return the venue to El Paso County. His motion was denied.

■ The decision whether to grant or deny a change of venue rests in the sound discretion of the trial court, and, absent a clear abuse of discretion, a trial court's decision will not be disturbed. *Wafai v. People,* 750 P.2d 37 (Colo.1988). Here, there is nothing in the record to indicate, nor does defendant suggest, that the trial court abused its discretion in determining that defendant could receive a fair and expeditious trial in Larimer County.

Defendant's motion to return the case to El Paso County merely stated that, given the length and complexity of the case, it would be more economical to try the case in that county where his co-defendants apparently were able to impanel a fair and impartial jury. However, as the court noted in its denial of defendant's motion, extensive pretrial publicity about the murder of the victim had increased during the five months between defendant's venue motions. Further, the court relied upon the fact that significant difficulties and time were required to pick a jury for a trial of one of defendant's co-defendants.

In these circumstances, the trial court did not abuse its discretion in determining that venue should not be changed. *See Wafai v. People, supra.*

## V.

■ Defendant's final contention is that the trial court abused its discretion in imposing an aggravated sentence of 12 years because its finding of extraordinary aggravating circumstances was based on elements of the crime for which he was convicted. Defendant's claim lacks merit.

Defendant's conviction of manslaughter, a class 4 felony, required the court to impose a two to eight year sentence. Section 18–1–105(1)(a)(IV), C.R.S. (1986 Repl.Vol. 8B). If,

however, the court found extraordinary aggravating circumstances, it could impose a discretionary aggravated sentence not to exceed 16 years. Section 18–1–105(6), C.R.S. (1993 Cum.Supp.).

■ When a sentence outside the presumptive range is imposed, the court is required to place on the record its findings as to aggravating circumstances that justify variation from the presumptive range. *People v. Vela,* 716 P.2d 150 (Colo.App.1985). Further, there must be sufficient facts in the record to support the trial court's finding. *People v. Walters,* 632 P.2d 566 (Colo.1981). And, a trial court's sentencing decision will not be reversed absent a clear abuse of discretion. *People v. Watkins,* 684 P.2d 234 (Colo.1984).

Here, the court stated that: . "If there ever was a crime of manslaughter that can be characterized by the brutality and extraordinary aggravating [circumstances], this crime was." The court found that the nature of the offense was extremely violent, the victim lay helpless and unconscious through most of the attack, and the victim in no way provoked the attack. The court further found that defendant not only minimized, but flatly denied his involvement in kicking the victim. The court also noted that defendant had consumed alcohol the night of the incident.

Based on the record before us, we conclude that the trial court considered appropriate factors and made sufficient findings to support its sentence. Hence, it will not be disturbed on review.

■ Finally, we reject defendant's assertion that the trial court improperly considered the elements of the offense as extraordinary aggravation. No constitutional or statutory provision prohibits the trial court's consideration of specific relevant facts, which in isolation, are not necessarily determinative of the essential elements of the offense as extraordinary aggravating circumstances justifying the imposition of a sentence in the aggravated range. *People v. Sanchez,* 769 P.2d 1064 (Colo.1989); *People v. Hernandez–Luis,* 879 P.2d 429 (Colo.App.1994).

The judgment and sentence are affirmed.

METZGER, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent. I have concluded from a review of the record that there is no evidence to support the charge of extreme indifference murder, § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B), and thus, it was error to instruct the jury on that offense. Therefore, I would reverse and remand for a new trial.

On September 21, 1991, the defendant and a group of his high school friends attended a party. After the party the defendant, with others, gathered at the intersection of Nevada Avenue and Pikes Peak Boulevard in downtown Colorado Springs. The defendant and some of his friends were intoxicated, angry, and belligerent.

On at least one occasion, the defendant and his friends challenged and taunted a small group of persons who then retreated to a vehicle. The defendant attacked one of the members of this first group, continued to strike this person after he had gotten into the vehicle, and kicked the vehicle as it was leaving. Another member of the defendant's group broke the rear window of the vehicle with his hand, suffered a cut hand, and bled profusely, as a result. While some fighting occurred with this first group, there is no evidence that anyone was seriously injured, and no evidence that any person's life was threatened or endangered.

After this first group left, the defendant, among others, kicked some newspaper dispensing machines and continued to be noisy, unruly, and belligerent.

The victim and his companion were walking north on Nevada Avenue approaching Pikes Peak Boulevard when they encountered the defendant and his friends. The victim was immediately struck down by a blow to the back of his head. The defendant, and others, then began to kick the victim severely until well after the victim quit defending himself.

The defendant kicked the victim several times in the head and continued to do so after the others had stopped. The victim died of blunt trauma to the head.

This was a senseless killing of a person without any motive, or without any motive based on anything over which the victim had control. The defendant acted in a manner manifesting an extreme indifference to the life of the victim.

The defendant was charged with extreme indifference murder, § 18–3–102(1)(d), was convicted of manslaughter, § 18–3–104, C.R.S. (1986 Repl.Vol. 8B), and was sentenced to twelve years to the Department of Corrections. From this conviction and sentence he brings this appeal.

Here, inasmuch as the acts that constituted the fatal attack on the victim threatened or endangered only the victim, I conclude that extreme indifference murder cannot be applied to these facts without ignoring the rational distinction between it and second degree murder announced in *People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

In order to make my position clear, it is necessary to explore a portion of the history of extreme indifference murder in Colorado. I am aware that there have been numerous amendments to the statute, some of which are described, and that each case discussed must be read in light of the then existing statute.

In *People v. Marcy,* 628 P.2d 69 (Colo. 1981), the defendant challenged the constitutionality of the then extreme indifference murder statute arguing that there was no rational distinction between it and second degree murder. The court held the extreme indifference murder statute was unconstitutional as violative of the guarantee of equal protection as it could not be reasonably distinguished from second degree murder.

At that time, the crime of first degree murder included the following:

A person commits the crime of murder in the first degree if:

. . . .

(d) Under circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another.

Colo.Sess.Laws 1977, ch. 224, § 18–3–102(1)(d) at 960.

The crime of second degree murder was then, and is now, defined as:

A person commits the crime of murder in the second degree if:

(a) He causes the death of a person knowingly, but not after deliberation.

Section 18–3–103(1)(a), C.R.S. (1986 Repl.Vol. 8B).

The possible penalty for extreme indifference murder has always been substantially higher than the penalty for murder in the second degree. Both offenses require the culpable mental state of "knowingly."

In 1981, following *Marcy,* the General Assembly amended extreme indifference murder to provide as follows:

A person commits the crime of murder in the first degree if:

. . . .

(d) Under circumstances *evidencing an attitude of universal malice* manifesting extreme indifference to the value of human life *generally,* he knowingly engages in conduct which creates a grave risk of death to a person, *or persons,* other than himself, and thereby causes the death of another.

Section 18–3–102(1)(d) (emphasized language added by General Assembly in 1981).

In *People v. Jefferson, supra,* our supreme court held the amended statute constitutional as it could reasonably be distinguished from murder in the second degree even though both continued to require the mental state of "knowingly." The distinction recognized in *Jefferson* arises from the added language.

In discussing the impact of this additional language, the court stated:

The 1981 addition of the words 'universal malice' and 'generally' to the language of the statute is an unmistakable indication of the legislative intent to retreat from the confusion sown by *People v. Jones,* and the 1977 amendments, and limit the application of extreme indifference murder to situations in which the actor demonstrates an indifference to human life generally, as distinguished from indifference to, or will-

ingness to take, a particular human life. This interpretation is supported by the addition of the words 'or persons' following person in the statute.

These changes reinforce the element of cold-bloodedness. When a person creates a grave risk of death to a person or persons and kills for essentially no reason, or upon slight or insufficient provocation without knowing or caring who the victim may be, *Longinotti,* 46 Colo. at 181, 102 P. at 168, the state is justified in treating the crime as first-degree murder. The amended statute emphasizes those crucial factors which make extreme indifference murder a more serious crime than second-degree murder, even assuming an identical *mens rea* requirement for both crimes. ·

*People v. Jefferson, supra,* at 1232.

The legislative retreat from *People v. Jones,* 193 Colo. 250, 565 P.2d 1333 (1977), *appeal dismissed,* 434 U.S. 962, 98 S.Ct. 498, 54 L.Ed.2d 447 (1977), and the court's discussion of *Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909) are central to my position.

In *Jones,* the defendant met the victim by chance for the first time on the evening of the killing and the two went out for drinks. The defendant returned the victim to her apartment and stabbed her to death. The defendant's conviction for extreme indifference murder was affirmed on appeal. Our supreme court also affirmed the trial court's denial of post-conviction relief pursuant to Crim.P. 35(c). *People v. Jones,* 668 P.2d 937 (Colo.1983).

In *Jefferson,* the court stated that the "confusion sown by *People v. Jones*" was the application of extreme indifference murder to a situation in which the grave risk of death was confined to one identified person. The criticism of, or departure from, *Jones* in *Jefferson* was anticipated by the concurring opinion of Justice Lohr in *People v. Ramos,* 708 P.2d 1347 (Colo.1985) which arose under the current statute.

In *Ramos,* Justice Lohr stated: ·

In the 1981 amendment, among other changes, the legislature added the concept of 'universal malice' to the definition of the crime of extreme indifference murder. We

have not analyzed the meaning of 'universal malice' in the context of this current version of the statute. We have stated before that "[u]niversal malice is evinced by acts which are 'calculated to put the lives of many persons in jeopardy without being aimed at anyone in particular.'" *People v. Jones,* 193 Colo. 250, 254 n. 5, 565 P.2d 1333, 1336 n. 5 (1977), quoting from *Longinotti v. People,* 46 Colo. 173, 177, 102 P. 165, 167 (1909). In *People v. Jones,* which involved a review of a conviction for extreme indifference murder under a prior version of the present statute, we held that the evidence was sufficient to support the conviction even though the defendant's conduct was directed towards a single person. We concluded that the extreme indifference murder statute as it was then constituted prohibited conduct that greatly endangered only a single person because the statute proscribed 'conduct which creates a grave risk of death to *a person.*' 193 Colo. at 254, 565 P.2d at 1336 (emphasis in the original). We implicitly rejected an argument that universal malice was a required element of the crime. However, the statute has now been amended to incorporate explicitly a 'universal malice' requirement. *This raises the obvious question whether a person still can be convicted of an offense under the statute if his conduct and intent are directed only towards a particular person.*

*People v. Ramos,* 708 P.2d at 1353–54 (latter emphasis added).

I conclude that Justice Lohr's question was answered in the negative in *Jefferson,* in which he concurred.

Finally, I note *Longinotti v. People, supra,* which is of interest because of its often quoted, but perhaps confusing, passage referring to the murderer as acting "without knowing or caring who may be the victim." In this context, I believe, "knowing" does not mean "acquainted with," but should be equated with "being aware of."

In my view, extreme indifference murder under *Jefferson* is limited to those situations in which the fatal act endangers, or potentially endangers, more than one person. These situations would include, but would not be

limited to, the random firing of a weapon into a crowd or occupied structure, driving a vehicle into a crowd, or introducing a virus or poison into an air, water, food, pharmaceutical, or illicit drug supply. Arson resulting in death, another indiscriminate act which includes the use of explosive devices, is first degree murder under the felony murder rule. Section 18–3–102(1)(b), C.R.S. (1993 Cum. Supp.). There is a valid public interest in making these indiscriminate and terroristic acts first degree murder when they result in the death of any person. In my view, however, there is no evidence of such conduct in this case.

Included in extreme indifference murder are those situations in which the defendant commits an act which can kill indiscriminately but which, in fact, endangers only the victim. For example, the defendant causes an explosion in a public place which would normally endanger many people but only the victim is endangered because the device malfunctions, the device is located in such a manner that its effect is limited, or some fortuitous circumstance causes the crowd to be dispersed so that only the victim is actually endangered. Another example would be when the defendant fires a weapon into an occupied structure at a time when only the victim is present. These scenarios give meaning to the use of "person" in the statute and added meaning to the phrase "without knowing [being aware of] or caring who the victim may be." *See Longinotti v. People, supra.* Again, no such conduct occurred in this case.

I believe my view is in accord with *People v. Atkins,* 844 P.2d 1196 (Colo.App.1992) in which extreme indifference murder was distinguished from premeditated murder when a defendant was charged and convicted of both. In *Atkins,* a panel of this court held that the term "universal malice" describes those acts greatly dangerous to the lives of persons other than the one killed, revealing a depraved mind, and which do not include a killing from intentional, and I would add knowing, acts directed at the person slain. *See also People v. Rodriguez,* 888 P.2d 278 (Colo.App.1994); *People v. Fernandez,* 883 P.2d 491 (Colo.App.1994).

The People and the majority find evidence of "universal malice" in the conduct of the defendant and his companions prior to the encounter with the victim. While it is true that the defendant and his companions confronted, challenged, and even attacked persons indiscriminately, there is little indication in the evidence that any person's life was endangered prior to the attack on the victim. More importantly, there is no evidence that the attack on the victim endangered, or could have endangered, anyone other than the victim.

I recognize that, in discussing the history of extreme indifference murder in *Jefferson,* our supreme court included examples of cases in which the fatal activity endangered only the victim. It is the inclusion of these examples that has led, in my opinion, to what confusion currently exists.

In my view, the jury's verdict is amply supported by the evidence; and is the most appropriate verdict in light of all of the evidence. The verdict did not result from a compromise which could have been influenced by the fact that it was improvidently instructed to consider extreme indifference murder. I would, therefore, be inclined to hold that the error in instructing the jury on extreme indifference murder was harmless as it did not affect any substantial rights. Crim.P. 52(a).

I am not, however, permitted to speculate as to what, if any, impact the improvidently delivered instruction had on the deliberations and decision of the jury. It would appear that where, as here, juries are instructed with respect to an offense that is not supported by the evidence, a new trial is required. *Leonard v. People,* 149 Colo. 360, 369 P.2d 54 (1962); *Tate v. People,* 125 Colo. 527, 247 P.2d 665 (1952). In both *Leonard* and *Tate,* our supreme court reversed convictions of lesser offenses and remanded for new trials on the ground that there was no evidence in the record to support an instruction on first degree murder.

Therefore, I would reverse and remand for a new trial.